COLLINGSWORTH GENERAL HOS-
PITAL and Texas Employment
Commission, Petitioners,

v.

Fredonia HUNNICUTT, Respondent.

No. 97–0894.

Supreme Court of Texas.

Argued April 28, 1998.

Decided June 25, 1998.

G. Keith Davis, Wellington, Anthony Aterno, Dan Morales, Austin, for Petitioners.

James A. Rasmussen, Wichita Falls, for Respondent.

ABBOTT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, ENOCH, OWEN, BAKER and HANKINSON, Justices, join.

Fredonia Hunnicutt was fired from her job at Collingsworth General Hospital after the Hospital learned that she had pled guilty to the felony charge of aggravated assault. The assault charge stemmed from Hunnicutt's slashing another woman with a box cutter.

The Texas Employment Commission [1] denied Hunnicutt's claim for unemployment benefits, concluding that her actions constituted "misconduct connected with [her] last work" under section 207.044(a) of the Texas Labor Code. The trial court sustained the TEC's decision denying Hunnicutt's claim. The court of appeals reversed the judgment of the trial court, and rendered judgment for Hunnicutt. We conclude that substantial evidence supports the TEC's decision that Hunnicutt's conduct was "misconduct connected with her last work." We therefore reverse the judgment of the court of appeals and render judgment for the TEC and Collingsworth General Hospital.

I

On the day of the assault, Hunnicutt received a telephone call at home from Cynthia Shrubs, who had an affair with Hunnicutt's husband. Upset by the call, Hunnicutt immediately left her home and went to Shrubs' residence to confront Shrubs about the telephone call. The confrontation deteriorated into a physical fight. During the course of the fight, Hunnicutt took a box cutter from her coat pocket and slashed Shrubs. All of this occurred while Hunnicutt was off-duty from her job at the Hospital.

Hunnicutt was arrested and indicted for aggravated assault, a third degree felony. She pled guilty and received deferred adjudi-

---

1. Effective September 1, 1995, after the trial of this case, the Texas Employment Commission was renamed the Texas Workforce Commission.

Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 11.75, 1995 Tex. Gen. Laws 3543, 3621–22. In this opinion, it will be referred to as the TEC.

cation, four years probation, a $1,000 fine, and was ordered to pay restitution to the Collingsworth Family Clinic and Collingsworth General Hospital. The news of Hunnicutt's guilty plea was printed in the local newspaper. Soon thereafter, the Hospital terminated Hunnicutt for violating its Personnel Policies Manual, which provided for immediate termination for committing certain acts. At the time she was fired, Hunnicutt was a housekeeping supervisor for the Hospital and had worked there for approximately twenty-five years.

A TEC examiner denied Hunnicutt unemployment benefits pursuant to section 207.044(a) of the Texas Labor Code. This section provides that an individual "is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work." TEX. LAB.CODE § 207.044(a). Hunnicutt appealed that decision to an Employment Commission Appeal Tribunal. After a full hearing, the Appeal Tribunal found for Hunnicutt, and reversed the examiner's initial decision. The Hospital then appealed the Tribunal's decision directly to the TEC, which reversed the Tribunal's decision and discontinued Hunnicutt's benefits. The TEC's conclusions of law provide:

> The Commission does not agree with the Appeal Tribunal's conclusion that the claimant was discharged for reasons other than work-connected misconduct. Rather, the Commission concludes that the claimant's admitted act of aggravated assault with a deadly weapon supports the conclusion that she violated the employer's policy which prohibits destructive acts harmful to persons. Although the court has refrained from making a final judgment on the claimant's guilt or innocence, such judicial finding is not prerequisite to a finding of the policy violation for which the claimant was terminated. The very act of stabbing another individual with a knife is sufficient to support the finding that the claimant violated the above-referenced policy which prohibits destructive acts harmful to persons. Consequently, we will reverse the Appeal Tribunal decision by disqualifying the claimant from the receipt of benefits under Section 207.044 of the Act.

The trial court found that substantial evidence supported the TEC's decision and rendered judgment for the TEC and Collingsworth General Hospital. The court of appeals reversed the trial court's judgment and held that the trial court erred by concluding that substantial evidence supported the TEC's order denying benefits. 949 S.W.2d at 54, 57. The court of appeals held that Hunnicutt was entitled to unemployment benefits because the evidence failed to show a factual link or concrete nexus between Hunnicutt's misconduct and her "last work." 949 S.W.2d at 56.

## II

■■■ TEC decisions regarding benefit payments are subject to trial de novo review in which the trial court determines whether substantial evidence supports the TEC's ruling. *See* TEX. LAB.CODE § 212.202(a); *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex.1986). The TEC's ruling carries a presumption of validity, and the party seeking to set aside the TEC's decision has the burden to show that it was not supported by substantial evidence. *Mercer,* 701 S.W.2d at 831. Under the substantial evidence standard of review, the issue is whether the evidence introduced before the trial court shows facts in existence at the time of the TEC's decision that reasonably support the decision. The reviewing court may not set aside a TEC decision merely because it would reach a different conclusion. *Id.* It may do so only if it finds that the TEC's decision was made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious. *Id.*

## III

■■■ The Hospital terminated Hunnicutt for violating its Personnel Policies Manual, which provided for immediate termination of employees whose conduct fell within certain categories, including "performance of malicious or destructive acts harmful to persons" and "any serious violation of hospital rules or serious breach of accepted standards of conduct and/or safety." Hunnicutt's conduct fell within both categories, and, pursuant to its policy, the Hospital immediately terminated

her. The TEC relied on Hunnicutt's violation of the Hospital's policy as a basis for denying benefits.

■ Not every violation of an employer's personnel policy will trigger the denial of unemployment benefits. Among other things, the violation must amount to "misconduct" as defined in Texas Labor Code § 201.012:

> mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees.

TEX. LAB.CODE § 201.012(a). Hunnicutt's intentional violation of a law is one of the ways her conduct amounts to misconduct.

To justify the denial of benefits, however, the misconduct must also be "connected with" the individual's last work. We find that, in this case, the misconduct is so serious, and the Hospital's policy against inflicting harm to persons so fundamental to its health-care mission, that Hunnicutt's violation of this policy adversely impacted her employer's interests. This constitutes substantial evidence that her misconduct was "connected with" her last work.

■ Hunnicutt contends that her crime was not "connected with" her work because it was committed while off-duty. Likewise, the dissent would find that Hunnicutt's misconduct had "no factual nexus" with her job. We need not announce a bright-line rule at this time concerning when an employee's conduct is "connected with" her last work. The fact that one or more acts of employee misconduct occurred while the employee was on duty or occurred on the employer's premises may be sufficient, depending on the circumstances, to satisfy the "connected with" requirement, but neither is necessary. The adverse impact of an employee's misconduct on an employer will not always depend on whether the misconduct occurred while the employee was on-duty or off-duty or whether the misconduct occurred on or off the employer's premises.

In reaching our conclusion that Hunnicutt's misconduct was "connected with" her work at the Hospital, the Hospital's role as a public service health care provider is of paramount importance. It is vital to the Hospital that its employees abstain from physically harming others, regardless of whether the act occurs on-duty or off-duty. Hunnicutt agreed that "part of the concern that a hospital has towards its patients is to maintain and have their trust" and that "part 'of the responsibility that a hospital has towards its patients [is] their safety." The Hospital administrator testified that Hunnicutt's conduct caused him concern about "the safety of the patients and the employees." Hunnicutt committed a violent crime against another human being. The Hospital's policy against such acts is clearly stated in its Personnel Policies Manual. The Hospital views such conduct as so serious as to justify immediate termination. Hunnicutt's violent and harmful conduct—whether on-duty or off-duty—is so inimical to the very purpose and function of the Hospital that it would have adversely impacted the Hospital's interests to continue her employment. Therefore, it would not be unreasonable, arbitrary, or capricious to conclude that Hunnicutt's termination is "connected with" her work at the Hospital.

Our holding furthers the Unemployment Compensation Act's intent and purpose to provide compensation for workers who are unemployed through no fault of their own. The first section of the Act, as it was enacted in 1936, contains this statement of legislative purpose:

> WHEREAS [i]t is detrimental to the moral, civil, and physical well-being of individuals to be sustained by charities and public grants. Past experience has further shown that oftentimes workers are unemployed *through no fault of their own* and of necessity, are required to live by public charities.

Unemployment Compensation Act, 44th Leg., 3d C.S., ch. 482, § 1, 1936 Tex. Gen. Laws 1993–94 (emphasis added); *see also Norris v. Texas Employment Comm'n*, 688 S.W.2d 125, 129 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.)("Unemployment benefits are to subsidize a claimant when he

is unemployed through no fault of his own."); *De Leon v. Texas Employment Comm'n*, 529 S.W.2d 268, 270 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e)("The Texas Unemployment Compensation Act was intended to provide a method of compensation for persons who are unemployed through no fault of their own."). Clearly, Hunnicutt's unemployment is her own fault.

Courts in other states with identical or substantially similar statutory language have construed their statutes to deny unemployment benefits to former employees when the employee's off-duty misconduct would adversely affect the employer's interests. *See, e.g., Prebula v. Arizona Dep't of Economic Sec.*, 138 Ariz. 26, 672 P.2d 978, 981 (App. 1983)("If an employee's duties and responsibilities are such that his actions while off-duty may adversely affect the reputation, public trust, or confidence on which his employer's business is dependent, his off-duty misconduct may be connected with the work."); *O'Neal v. Employment Sec. Agency*, 89 Idaho 313, 404 P.2d 600, 603 (1965)(because of the nature of certain employments, off-duty conduct of employees may harm the interests of the employer)(citing *Gregory v. Anderson*, 14 Wis.2d 130, 109 N.W.2d 675, 679 (1961)); *Employment Sec. Bd. of Maryland v. LeCates*, 218 Md. 202, 145 A.2d 840, 845 (1958)(legislature did not intend to limit misconduct "connected with" the employee's work to conduct which occurred during the hours of employment and on the employer's premises); *Erne v. Employment Div.*, 109 Or.App. 629, 820 P.2d 875, 877 (1991) (depending on the nature of the employer's business, job descriptions may require certain standards of conduct while the employee is off-duty).

In reaching a contrary conclusion in this case, the court of appeals adopted the three-part standard established by the Washington Supreme Court in *Nelson v. Department of Employment Security*, 98 Wash.2d 370, 655 P.2d 242, 244 (1982). 949 S.W.2d at 56. Under that standard, to establish whether an employee's off-duty misconduct was connected to an employee's last work:

> the employer must show ... that a reasonable person would find the employee's conduct: (1) had some nexus with the employee's work; (2) resulted in some harm to the employer's interest; and (3) was in fact conduct which was (a) violative of some code of behavior contracted for between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

949 S.W.2d at 56. We reject the court of appeals' adoption of the *Nelson* standard because that standard includes requirements, such as an "intent or knowledge that the employer's interests would suffer," not prescribed by Texas Labor Code Section 207.044(a).

\* \* \* \* \*

We conclude that Hunnicutt's conduct was indeed "misconduct connected with [her] last work," and that there is substantial evidence to support the Commission's decision. Accordingly, we reverse the judgment of the court of appeals, and render judgment for the TEC and Collingsworth General Hospital.

SPECTOR, Justice, filed a dissenting opinion, in which GONZALEZ, Justice, joined.

SPECTOR, Justice, dissenting opinion, in which GONZALEZ joined.

Fredonia Hunnicutt committed a crime of passion. Provoked by a number of calls from her husband's paramour, Hunnicutt confronted the woman and assaulted her. These events occurred while Hunnicutt was off-duty from her job as a housekeeper at Collingsworth General Hospital. Although Hunnicutt had been employed at the hospital for twenty-five years without incident, Collingsworth fired her because of the assault. Hunnicutt did not meet or contact the woman at the hospital, and she did not obtain the weapon used in the assault at work. The assault bore no relationship whatsoever with Hunnicutt's job performance. Nevertheless, the Court holds that Hunnicutt is not entitled to benefits under the Unemployment Compensation Act, TEX.LAB.CODE §§ 201.001-217.017. 988 S.W.2d 706. Because the Court's construction is contrary to the Act's plain language, I respectfully dissent.

Under the Act, "An individual is disqualified for benefits if the individual was discharged for misconduct *connected with the individual's last work.*" Tex.Lab.Code § 207.004(a) (emphasis added). Without enunciating any clear test for determining whether misconduct is "connected with" an employee's work, the Court concludes that Hunnicutt was properly denied benefits because her off-duty conduct "is so inimical to the very purpose and function of the Hospital that it would have adversely impacted the Hospital's interests to continue [Hunnicutt's] employment." 988 S.W.2d at 709.

The Court errs by upholding the denial of unemployment benefits to Hunnicutt for misconduct that had no factual nexus with her job. The Court's decision effectively gives no effect to the statutory requirement that misconduct must be "connected with" an employee's work in order for the Commission to deny benefits. It thus violates the fundamental principle that requires courts to give effect to every word or clause of a statute. *See Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex. 1981)). Whether the hospital was entitled to terminate at-will employee Hunnicutt is not the issue before the Court; the issue is her entitlement to unemployment benefits. I would affirm the judgment of the court of appeals.