TEXAS WORKFORCE COMMISSION
and Rodney Peterson, Appellants

v.

BL II LOGISTICS, L.L.C., Appellee.

No. 06–07–00031–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Sept. 26, 2007.

Decided Oct. 12, 2007.

Jewell A. Patricio, Asst. Atty. Gen., Austin, for appellants.

Edgar J. Garrett, Jr., Faires & Garrett, Commerce, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

### Procedural History

Rodney Peterson was terminated from his position as a truck driver for BL II Logistics, L.L.C. (BL). Peterson applied for unemployment benefits; the Texas Workforce Commission (TWC) ruled Peterson ineligible for benefits. However, when Peterson appealed that ruling to the TWC's appeal tribunal, the TWC reversed its prior decision and found Peterson eligible for benefits. BL then appealed the tribunal's ruling to the 62nd Judicial District Court in Hopkins County. *See* TEX. LAB.CODE ANN. § 212.202 (Vernon 2006). The trial court found there was not substantial evidence to support the tribunal's ruling and reversed the TWC's decision. The TWC, representing Peterson, has appealed the trial court's judgment to this Court. After reviewing the record, applicable caselaw, and oral argument of the parties, we reverse the trial court's judgment.

### Factual Background

Peterson was employed by BL to deliver aluminum logs, comparable in size to telephone poles, for Hydro Aluminum, BL's sole customer. Peterson indicated that while he was stopped at a fast food restaurant, he was approached in the parking lot by another truck driver who was also carrying a load of aluminum logs which were similar to those Peterson was hauling for Hydro. Peterson said the unidentified driver related that he was attempting to sell his load; by way of explanation, the truck driver represented that he had missed his cargo drop-off appointment and needed to empty his load of aluminum logs

in order to carry another load. Peterson said he told the truck driver that he did not have enough money with which to purchase the load but called his brother (who is also a truck driver). Peterson's brother then came to the parking lot, met with the other driver, and, as far as Peterson knew, purchased the other driver's load. Shortly after these events, Peterson was asked to meet with Billy Joe McCracken, the owner of BL, and Bill Painter, logistic coordinator of Hydro. After hearing Peterson's story, Painter said that he was going to conduct his own investigation of the matter and that until this investigation had been completed, Peterson was not to return to Hydro's property. Peterson said he was told by McCracken that Peterson still had his job if Peterson had told the truth; McCracken contradicted that statement, testifying that after the meeting, he had told Peterson that he had been terminated.

McCracken testified that he had fired Peterson because Peterson's actions amounted to a violation of the trust necessary between Hydro and BL. McCracken said he was "shocked" by the amount of knowledge Peterson possessed regarding the aluminum scrap business, particularly pertaining to the values of the aluminum logs on the market. McCracken maintained that the "breach of trust" by Peterson was sufficient cause for him to fire Peterson.

### Trial de novo—"Hybrid Review"

The trial court reviews de novo a TWC decision to determine whether there is substantial evidence to support the TWC's decision. TEX. LAB.CODE ANN. § 212.202(a). "Hybrid review" is the characterization given to the kind of substantial evidence review to be given by the courts under this statute:

> Under this hybrid review, the trial judge "conducts an evidentiary hearing for the limited purpose of determining 'whether

at the time the questioned order was entered there then existed sufficient facts to justify the agency's order.'" *Bd. of Tr. of Big Spring Firemen's Relief & Ret. Fund v. Firemen's Pension Comm'r,* 808 S.W.2d 608, 612 (Tex.App.-Austin 1991, no writ) (citing *Gerst v. Nixon,* 411 S.W.2d 350, 354 (Tex.1966)); *see Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984) ("The reviewing court must inquire whether the evidence introduced before it shows facts in existence at the time of the administrative decision which reasonably support the decision."). While the trial judge "must hear and consider evidence to determine whether reasonable support for the administrative order exists," the "agency itself is the primary fact-finding body, and the question to be determined by the trial court is strictly one of law." *Brinkmeyer,* 662 S.W.2d at 956.

*Palmer v. Shaw,* No. 05–04–00941–CV, 2006 WL 234110, at *1, 2006 Tex.App. LEXIS 817, at *2–3 (Tex.App.-Dallas Feb. 1, 2006, no pet.) (mem. op.).

### What Is Substantial Evidence?

 Judicial review of a TWC tribunal ruling is "by trial de novo based on the substantial evidence rule." TEX. LAB.CODE ANN. § 212.202. "Substantial evidence" is more than a scintilla, but less than a preponderance of the evidence. *City of Houston v. Tippy,* 991 S.W.2d 330, 334 (Tex. App.-Houston [1st Dist.] 1999, no pet.). Under the substantial evidence review, the issue is whether the evidence introduced before the trial court reveals facts which were in existence at the time of the TWC's ruling which reasonably support the decision made by the TWC tribunal. *Collingsworth Gen. Hosp. v. Hunnicutt,* 988 S.W.2d 706, 708 (Tex.1998); *City of Houston v. Morris,* 23 S.W.3d 505, 507 (Tex. App.-Houston [1st Dist.] 2000, no pet.). The burden is on the party seeking to set

aside a TWC decision to prove that the ruling is not supported by substantial evidence. *Mercer v. Ross,* 701 S.W.2d 830, 831 (Tex.1986). In determining whether there is substantial evidence to support an agency's decision, the trial court determines whether reasonable minds could have reached the same conclusion as that reached by the administrative agency. *Dotson v. Tex. State Bd. of Med. Examiners,* 612 S.W.2d 921, 922 (Tex.1981); *Morris,* 23 S.W.3d at 507. Whether the TWC's decision was supported by substantial evidence is a question of law. *Morris,* 23 S.W.3d at 508. The trial court may set aside such a TWC decision only if the court determines that the decision was made without regard to the law or the facts and, therefore, was unreasonable, arbitrary, or capricious. *Mercer,* 701 S.W.2d at 831; *Morris,* 23 S.W.3d at 508. Because the determination of whether the TWC's decision was supported by substantial evidence is a question of law, we review de novo the trial court's determination. *See El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 312 (Tex.1999). We look at the evidence presented to the trial court, not to the agency record. *Nuernberg v. Tex. Employment Comm'n,* 858 S.W.2d 364, 365 (Tex.1993). A guiding principle of the substantial evidence rule is that when evaluating the evidence, the courts must use a reasonableness standard. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984); *Gerst v. Nixon,* 411 S.W.2d 350, 354 (Tex.1966); *Fire Dep't of City of Fort Worth v. City of Fort Worth,* 147 Tex. 505, 217 S.W.2d 664 (1949). If, based on the evidence, any reasonable person could have come to the same conclusion as the TWC, then the agency's decision must be upheld, even if the reviewing court would have reached a different conclusion. *See Potts v. Tex. Employment Comm'n,* 884 S.W.2d 879,

882 (Tex.App.-Dallas 1994, no writ). Even where the agency's decision is shown to be against the great weight and preponderance of the evidence, a court is bound, as a matter of law, to affirm the agency decision so long as a reasonable person could have reached the conclusion at which the agency arrived. *Tex. Employment Comm'n v. Ryan*, 481 S.W.2d 172, 175 (Tex.Civ.App.-Texarkana 1972, no writ).

### TWC Decision Presumed Valid

■ A TWC decision regarding unemployment benefit payments carries a presumption of validity with it. *Hunnicutt*, 988 S.W.2d at 708. The party seeking to set the decision aside must assume the burden of showing that it was not supported by substantial evidence. *Id.* We may set aside the decision only if it was made without regard to the law or the facts and, therefore, was unreasonable, arbitrary, or capricious. *Id.; Kellum v. Tex. Workforce Comm'n*, 188 S.W.3d 411 (Tex. App.-Dallas 2006, no pet.) (Two years after hiring, the employer fired Kellum for having represented on his application for employment he had not been convicted of a felony. In fact, Kellum had pled guilty to a felony and had served out deferred adjudication; the TWC found that this was misconduct and denied benefits, a decision affirmed by the trial court. The appellate court found that no evidence of misconduct as defined by the Texas Labor Code was shown, and so the TWC erred as matter of law.).

### Evidence Before the Trial Court

The trial court heard testimony from Peterson and from McCracken the bulk of which is set out above. In addition to the above rendition, it is noted that there is some conflict in the testimony as to whether McCracken actually told Peterson that his services had been terminated. Whether or not this was actually said or not, the impact of it was the same. McCracken

quit taking his calls and gave Peterson no other work, so Peterson assumed that he no longer had a job with BL. Peterson also testified that he was asked to meet with a Detective Vaughn, in Commerce, to submit to a polygraph examination; on his arrival to take the test, the detective told Peterson that he had decided not to conduct the polygraph test because the aluminum logs which Peterson's brother had delivered were not traced to Hydro, but, rather, had come from somewhere in Houston. Peterson's testimony that he had not been charged or convicted of any theft crime was not contradicted.

McCracken's testimony lines up generally with Peterson's, but McCracken claims that he had the right to fire Peterson because Peterson's conduct raised a "breach of trust" issue on the part of Hydro, prompting Hydro to bar Peterson from its premises. Since Hydro was BL's only customer and because Peterson could not enter onto Hydro's property to pick up loads of aluminum logs, Peterson could no longer work for BL. McCracken said the incident involving Peterson and his brother and the second load of aluminum "create[d] apparent apprehension on the part of the shipper [Hydro] as far as safety of the product or integrity . . . ." McCracken found it "shocking" that Peterson would have as much knowledge as he demonstrated about the nature of the business in which Hydro was engaged. McCracken testified he found it illogical or implausible that another driver just happened to offer to sell Peterson a similar load of aluminum logs and that Peterson's brother was able to purchase the load, which McCracken said would have been about 43,000 pounds and worth around $50,000.00.

■ The thrust of McCracken's testimony to the trial court was that Peterson's conduct violated the "trust" between Hydro and BL, and thus warranted his firing.

The TWC claims the "trust" issue could not be before the trial court because it had not been ruled on or addressed by the appeal tribunal. This appears to be correct:

> [T]he principle that a reviewing court is obligated to sustain an agency order on any legal basis shown in the record is sometimes confused with the erroneous idea that a reviewing court must sustain an agency order on any "valid basis" shown in the record. *Public Utility Com'n of Texas v. Southwestern Bell Telephone Co.*, 960 S.W.2d 116, 121 & n. 7 (Tex.App.-Austin 1997, no writ). The principle does not mean that the reviewing court may sustain the agency upon a factual basis not passed upon by the agency. *Id.*

*Hernandez v. Tex. Workforce Comm'n*, 18 S.W.3d 678, 682 (Tex.App.-San Antonio 2000, no pet.). We do not need to reach a decision on whether the trial court could properly consider McCracken's claim of a violation of trust or whether such a claim was presented to the TWC. Rather, we find the trial court erred in reversing the TWC's decision.

▮ During the hearing, the TWC offered into evidence a certified copy of the tribunal's ruling; we have not found any exhibits submitted to this Court as part of the reporter's record, but the clerk's record does contain a copy of the tribunal's ruling. The TWC appeal tribunal's findings of fact included:

> The claimant [Peterson] was discharged by the employer because the employer's contracted shipper told the employer that the claimant was no longer allowed on the shipper's premises or to haul for the shipper. ... employer refused to indicate why the shipper would no longer allow the claimant on the shipper's premises or to haul for the shipper. The claimant denies misconduct....

In its conclusions, the tribunal applies Section 201.012 of the Texas Labor Code's definition of misconduct,[1] then states, "[t]he evidence establishes that the claimant was discharged for reasons other than misconduct connected with the work. The employer provided no evidence of misconduct connected with the work and the claimant denies any misconduct ... Therefore, the determination dated December 24, 2003, which disqualified the claimant from benefits ... will be reversed."

### BL's Burden at the Trial Court Level

▮ The party seeking to overturn the TWC's decision "must produce evidence that conclusively negates all reasonable support for the agency's decision, on any ground offered." *Morris*, 23 S.W.3d at 508 (citing *Brinkmeyer*, 662 S.W.2d at 956). In *Morris*, the city failed to explain the lengthy delay (several months) between initially suspending/disciplining the employee and ultimately firing her. The reviewing courts need not consider "incredible, perjured, or unreasonable testimony because such evidence is not substantial." However, the reviewing court may go no further than to examine the evidence for these infirmities. If there is substantial evidence which supports the order, the courts are bound to follow the discretion of the administrative body. *Brinkmeyer*, 662 S.W.2d at 956.

---

1. "Misconduct" is specifically defined by the Act as "mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." TEX. LAB. CODE ANN. § 201.012 (Vernon 2006). This definition is to be construed narrowly. *Kellum*, 188 S.W.3d at 414 (citing *Tex. Employment Comm'n v. Torres*, 804 S.W.2d 213, 216 (Tex.App.-Corpus Christi 1991, no writ)).

■ To overcome the TWC's decision, BL must have demonstrated to the trial court that the TWC's ruling was not based on substantial evidence. It is not sufficient to present evidence or testimony to the trial court which only amounts to "a story upon which reasonable minds might differ." *See id.* The challenging party must therefore produce evidence that conclusively negates all reasonable support for the agency's decision, on any possible ground. *Id.* Thus, the reviewing court— that is, the trial court—may set aside an agency's decision only if it finds that the decision was made without regard to the law or the facts and was therefore unreasonable, arbitrary, or capricious. *Mercer,* 701 S.W.2d at 831.

■ The trial court was bound to sustain the TWC's decision (rendered by its appeal tribunal) if there were, before the trial court, facts which reasonably supported the TWC's decision. *Hunnicutt,* 988 S.W.2d at 708.

> [W]hile the reviewing court is to a certain extent a fact-finder, it may not substitute its judgment for that of the agency on controverted issues of fact. When there is substantial evidence which would support either affirmative or negative findings the administrative order must stand, notwithstanding the agency may have struck a balance with which the court might differ. The trial court may not set aside an administrative order merely because testimony was conflicting or disputed or because it did not compel the result reached by the agency. Resolution of factual conflicts and ambiguities is the province of the administrative body and it is the aim of the substantial evidence rule to protect that function. The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness.

*Brinkmeyer,* 662 S.W.2d at 956 (citations omitted).

■ BL's burden was to counter the TWC's conclusion that BL had not offered any evidence of misconduct on Peterson's part. At most, in the hearing, McCracken offered testimony about suspicion. Texas is an "at will" employment State; that is, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *County of Dallas v. Wiland,* 216 S.W.3d 344, 347 (Tex.2007).[2] Therefore, BL had the ability to terminate its employment of Peterson whether it had suspicions about his integrity or whether it did not. The ability to terminate and the ability to recover unemployment benefits are two different questions. Although Peterson's potential involvement in the transaction between the phantom trucker and Peterson's brother regarding the other aluminum logs may have given rise for BL to entertain reasonable suspicions of wrongdoing on Peterson's part, simple suspicion of wrongdoing (either justified or unjustified) is not among the reasons enumerated in the statute to deny unemployment benefits.

Upon our review of the record, we cannot say the TWC's decision was unreasonable, arbitrary, or capricious. *See Mercer,* 701 S.W.2d at 831.

---

**2.** *See also Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998) (citing *Fed. Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993) (per curiam); *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723, 723 (Tex. 1990); *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 734–35 (Tex.1985); *E. Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888)).

Because reasonable minds could come to the same decision that the TWC reached, the TWC's decision must be upheld. *See Hunnicutt*, 988 S.W.2d at 708; *Potts*, 884 S.W.2d at 882.

We reverse the trial court's judgment and render a judgment affirming the TWC's decision that Peterson is entitled to benefits.