

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-15-00113-CV

_____

MOHAMMED FAWWAZ SHOUKFEH, M.D., P.A.,
D/B/A TEXAS CARDIAC CENTER, APPELLANT

V.

JAMES G. GRATTAN AND TEXAS
WORKFORCE COMMISSION, APPELLEES

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2014-510,479; Honorable William C. Sowder, Presiding

November 18, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Mohammed Fawwaz Shoukfeh, M.D., P.A., d/b/a Texas Cardiac Center (hereinafter "TCC"), appeals from a judgment in favor of Appellees, James G. Grattan, M.D., and Texas Workforce Commission (hereinafter "TWC"), on his claim for

unpaid wages under the Texas Payday Act.[1]  By two issues, TCC asserts (1) the trial court failed to enforce the plain language of Dr. Grattan's employment agreement and (2) its decision was not supported by substantial evidence.  We affirm.

BACKGROUND

Dr. Grattan was employed by TCC from June 19, 2006 through April 30, 2013. Throughout his employment, he was paid based on a formula set forth in a letter between him and Dr. Shoukfeh.  According to this formula, Dr. Grattan was to be paid the revenue collected by TCC from Dr. Grattan's patients, less (1) his direct expenses (e.g., insurance, communications, and other non-cardiac related expenses) and (2) his *pro rata* share of TCC's overhead expenses.[2]  At the time of his initial employment, TCC calculated each physician's *pro rata* share by dividing its overhead expenses for the entire practice by the number of physicians employed by TCC.  That is, overhead was evenly divided among all physicians employed by TCC.

On September 1, 2012, Dr. Jason Wischmeyer left TCC leaving three physicians—Drs. Shoukfeh, Paul Overlie, and Grattan.  In November 2012, TCC hired Dr. Ahmad Qaddour as a salaried employee.  At the time, Dr. Qaddour was a new physician, not yet credentialed by the two hospitals served by TCC.  Dr. Qaddour's

---

[1] *See* TEX. LAB. CODE ANN. §§ 61.001-.095 (West  2015 & Supp. 2016).

[2] Paragraph 1. E. of the letter stated as follows:

> The following terms shall *apply* beginning June 19, 2006.  [Dr. Grattan] will be responsible for his own malpractice and health insurance, life/disability insurance expenses, communication (i.e., cell phone, pager, etc.) expenses, and other non-cardiac related expenses as well as a pro rata share of the overhead expenses incurred by Association . . . and (ii) [Dr. Grattan] will receive [his] Net Receipts collected by the Association less Physician's pro rata share of the overhead expense.

(Emphasis added.)

2

contract with TCC, entitled "PHYSICIAN EMPLOYMENT AGREEMENT," states, under ARTICLE I. EMPLOYMENT Section 1.1 General Terms, that *"[p]hysican shall practice medicine* at the offices of Texas Cardiac Center." (Emphasis added.) Dr. Qaddour's agreement did not require that he pay any portion of TCC's overhead expenses. Instead, its overhead expenses continued to be divided *pro rata* among Drs. Shoukfeh, Overlie, and Grattan. Dr. Grattan was not a party to Dr. Qaddour's hiring or his compensation arrangement with TCC.

In January 2013, Dr. Grattan informed TCC that he was resigning and intended to vacate the premises in ninety days. When he subsequently received his earnings for the period of September 1, 2012 through March 2013, he discovered TCC's overhead expenses were being deducted, *pro rata*, from Drs. Shoukfeh, Overlie, and Grattan's compensation, while no overhead expenses were being deducted from Dr. Qaddour's salary. Furthermore, from November 2012 through April 2013, TCC's overhead expenses included Dr. Qaddour's salary.

In May 2013, Dr. Grattan filed a wage claim with the Texas Workforce Commission for wages due from TCC. He asserted his compensation had been erroneously calculated because TCC was dividing its overhead expenses among three physicians, rather than the four physicians actually employed. He sought $154,547.57 in unpaid wages earned from September 2012 to April 2013. In August, a Preliminary Wage Determination Order was issued awarding Dr. Grattan $38,435.89 in unpaid wages. Both Dr. Grattan and TCC appealed that order. In October, the TWC Wage Claim Appeal Tribunal issued its decision awarding Dr. Grattan unpaid wages of $5,817.32. Both parties again appealed to TWC.

3

In February 2014, TWC issued its decision awarding Dr. Grattan unpaid wages of $125,988.81. TWC reasoned that TCC's agreement with Dr. Grattan provided that its overhead expenses would be divided among its physicians *pro rata* and, for the entirety of the practice, its overhead expenses had been divided by the total number of TCC's practicing physicians. Accordingly, TWC determined that TCC erroneously calculated Dr. Grattan's compensation by subtracting one-third of TCC's overhead expenses for the months of November 2012 through April 2013, instead of one-fourth of those expenses.

In February, TCC petitioned for a trial *de novo* before the 99th District Court in Lubbock. All parties filed cross-motions for summary judgment. In March, the trial court granted summary judgment in favor of Dr. Grattan and TWC. This appeal followed.

DISCUSSION

TCC asserts Dr. Grattan's employment agreement was unambiguous in its requirement that TCC's overhead expenses would be divided among its "physicians" and that Dr. Qaddour was not a "practicing physician" for the purposes of that calculation because his duties and compensation differed from TCC's other physicians. TCC also asserts that the district court failed to determine Dr. Grattan's employment agreement was ambiguous and committed an error of law. We disagree.

STANDARD OF REVIEW

In an appeal from a TWC decision, a trial court reviews that decision *de novo* for the purpose of determining whether there is "substantial evidence" to support the decision. TEX. LAB. CODE ANN. § 212.202(a) (West 2015). *See Mercer v. Ross,* 701

S.W.2d 830, 831 (Tex. 1986).  In making this determination, the issue is not whether TWC made the correct decision; it is instead "whether the evidence introduced before the trial court shows facts in existence at the time of the [TWC's] decision that reasonably support the decision"; that is, whether reasonable minds could have reached the same conclusion.  *Blanchard v. Brazos Forest Products, L.P.,* 353 S.W.3d 569, 572 (Tex. App.—Fort Worth 2011, pet. denied) (quoting *Collingsworth Gen. Hosp. v. Hunnicutt,* 988 S.W.2d 706, 708 (Tex. 1998)).  Because substantial evidence is more than a mere scintilla but less than a preponderance of evidence, the evidence may preponderate against TWC's decision but still amount to substantial evidence.  *City of Houston v. Tippy*, 991 S.W.2d 330, 334 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

The "[r]esolution of factual conflicts and ambiguities is the province of the administrative body and it is the aim of the substantial evidence rule to protect that function." *Tex. Workforce Comm'n v. BL II Logistics, L.L.C.,* 237 S.W.3d 875, 881 (Tex. App.—Texarkana 2007, no pet.) (quoting *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984)).  Thus, TWC remains the primary fact-finding body, and the reviewing court may not substitute its judgment for TWC's on controverted fact issues.  *BL II Logistics, L.L.C.,* 237 S.W.3d at 878; *Edwards v. Tex. Emp't Comm'n,* 936 S.W.2d 462, 465 (Tex. App.—Fort Worth 1996, no writ).  Because the determination of whether TWC's decision was supported by substantial evidence is a question of law, we review *de novo* the trial court's determination.  *BL II Logistics, L.L.C.,* 237 S.W.3d at 878 (citing *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999)).

5

Further, TWC's ruling carries a presumption of validity and the party seeking to set it aside has the burden to show it was not supported by substantial evidence. *Hunnicutt*, 988 S.W.2d at 708. Thus, the party seeking to overturn TWC's decision must produce evidence that conclusively negates all reasonable support for the agency's decision—on any ground offered. *BL II Logistics, L.L.C.,* 237 S.W.3d at 880. We may only set aside TWC's decision if it was made "without regard to the law or the facts, and, therefore, was unreasonable, arbitrary, or capricious." *Mercer,* 701 S.W.2d at 831*.*

ISSUES ONE AND TWO—DR. GRATTAN'S EMPLOYMENT AGREEMENT

TCC argues that Dr. Grattan's employment agreement is unambiguous and TWC erred by failing to enforce the plain language of that agreement. The crux of TCC's assertion is that Dr. Qaddour was not a "practicing physician" for the purposes of dividing TCC's overhead expenses because he was a new physician with a different compensation package and his duties were different from TCC's other physicians.[3]

Trial courts may grant a summary judgment in cases tried under the substantial evidence rule, and appeals under the substantial evidence review are uniquely suited to summary judgment because the sole issue before the appellate court is a question of law, *Brazos Forest Products, L.P*., 353 S.W.3d at 573, i.e., whether there is substantial evidence supporting the district court's decision. As such, "[t]here is no restriction on summary judgment in a case tried under the substantial evidence rule." *JMJ*

---

[3] TCC does not take issue with the amount of damages awarded Dr. Grattan by the trial court in its *Final Judgment* except to say he was entitled to no damages.

*Acquisitions Mgmt., LLC v. Peterson*, 407 S.W.3d 371, 374 (Tex. App.—Dallas 2013, no pet.).

In a summary judgment case, the issue on appeal is whether the movant met his burden to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment *de novo* and consider the evidence in a light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.*

When the parties file competing motions for summary judgment, we determine all questions presented and render the judgment that the trial court should have rendered, if appropriate. *Tex. Workers' Compensation Ins. Fund v. Tex. Emp't Comm'n*, 941 S.W.2d 331, 333-34 (Tex. App.—Corpus Christi 1997, no writ). *See Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 295 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Even if we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *Dupree v. Boniuk Interests, Ltd.*, 472 S.W.3d 355, 364 (Tex. App.—Houston [1st Dist.] 2015, no pet.). "We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence." *Id.*

When interpreting a contract, our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Italian Cowboy Partners, Ltd. v.*

7

*Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). The parties' intent is governed by what is written in the contract, not by what one side contends they intended, but failed to say. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010). We give terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). We examine the writing as a whole to harmonize and give effect to all of the contract's provisions so that none is rendered meaningless or surplusage. *J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

Ordinarily, the parties' intent may be discerned from the instrument itself. However, when a question relating to the construction of a contract is presented, we are required to take the wording of the instrument, consider it in light of the surrounding circumstances, and apply the rules of contract construction to determine its meaning. *See ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 312 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). *See also Kachina Pipeline Company, Inc. v. Lillis,* 471 S.W.3d 445, 450 (Tex. 2015) ("[w]e may consider the facts and circumstances surrounding the contract, including 'the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give context to the parties' transaction'") (quoting *Americo Life, Inc. v. Myer,* 440 S.W.3d 18, 22 (Tex. 2014)). "If, in light of the surrounding circumstances, the language is capable only of a single meaning, we can confine ourselves to the writing." *ExxonMobil Corp.*, 174 S.W.3d at 312*. "*The parol evidence rule does not prohibit the consideration of

surrounding facts and circumstances that inform the contractual text and render it capable of only one meaning." *Dupree*, 472 S.W.3d at 355.

If a contract is not ambiguous, courts must enforce it as written without considering parol evidence for the purpose of creating an ambiguity or giving the contract "a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (*per curiam*). The contract is unambiguous if it can be given a certain or definite meaning as a matter of law. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). If the contract is subject to more than one reasonable interpretation after applying the pertinent rules of construction, then the contract is ambiguous and there is a fact issue regarding the parties' intent. *Id.*

Under the Texas Payday Act, "wages" mean compensation owed by an employer for "labor or services rendered by an employee, whether computed on a time, task, piece, commission, or other basis; and . . . [certain] pay owed to an employee under a written agreement with the employer or under a written policy of the employer." Tex. Lab. Code Ann. § 61.001(7)(A), (B) (West 2015). In addition, "[a]n employer may not withhold or divert any part of an employee's wages unless the employer: (1) is ordered to do so by a court of competent jurisdiction; (2) is authorized to do so by state or federal law; or (3) *has written authorization from the employee to deduct part of the wages for a lawful purpose*." *Id.* at § 61.018(1), (2), (3) (emphasis added).

Dr. Grattan's agreement stated that he was responsible for paying "a pro rata share of the overhead expenses incurred by the Association." The Association was

defined as "Shoukfeh, M.D., P.A. d/b/a [TCC]." Before Dr. Grattan joined TCC, it was comprised of three physicians, and its overhead expenses were divided *pro rata* among those physicians. When Dr. Grattan joined TCC, its overhead expenses were divided *pro rata* among the four then-existing physicians.[4] Thus, we find there is substantial evidence that Dr. Grattan's employment agreement did not require him to pay any more than a *pro rata* share of TCC's overhead expenses calculated by dividing those expenses by the number of physicians working for TCC. Further, there is no evidence that the *pro rata* provision in Dr. Grattan's employment agreement was ever amended to provide otherwise or that Dr. Grattan gave TCC any written authorization to deduct his share of the *pro rata* expenses based solely on three physicians.

TCC asserts we should make an exception to this contractual provision and permit it to collect more than this amount from Dr. Grattan because (1) often times only three physicians shared in *pro rata* distribution, (2) Dr. Qaddour had a different compensation agreement contemplating a substantially lower salary until he obtained hospital privileges, (3) Dr. Qaddour should not be treated as a fully practicing physician, (4) Dr. Qaddour will suffer substantially if TCC deducts his share of its overhead expenses from his present salary, and (5) if this court affirms the district court's judgment, we will be requiring that TCC violate section 61.018(3) of the Texas Labor

---

[4] In the absence of a contractual definition, we can resort to a standard dictionary. *See Pratt-Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 833 (Tex. App.—Dallas 2003, pet. denied) ("[w]here terms are not defined in agreements, we will use the plain, ordinary and generally accepted meaning attributed to the word . . . . Dictionaries may provide assistance to courts in finding that meaning."). "Pro rata" is defined as "proportionately according to some exactly calculable factor." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1820 (4th ed. 1976). "Association" is defined as "the act or action of associating . . . the quality or state of being associated: companionship, partnership, connection, combination." *Id.* The agreement clearly anticipated there would be other physicians in the association besides Dr. Grattan.

Code by making TCC deduct overhead expenses from Dr. Qaddour when his agreement does not require it. *See* TEX. LAB. CODE ANN. § 61.018(3) (West 2015).

Assertions (1), (2), (3), and (4) require the consideration of parol evidence introduced for the purpose of modifying Dr. Grattan's employment agreement and may not be considered by this court. *See America Life, Inc.*, 440 S.W.3d at 22 (the parol evidence rule precludes considering evidence that would render a contract ambiguous when the document, on its face, is capable of a definite meaning).

With regard to the fifth assertion, any dispute about how to handle TCC's overhead expenses going forward is between TCC and its physicians, not this court or Dr. Grattan. By affirming the trial court's judgment, this court is not requiring TCC to do anything more than pay the unpaid wages awarded by TWC and trial court to Dr. Grattan. Accordingly, because the plain language of the agreement provided that a *pro rata* share of the overhead expenses were to be deducted from Dr. Grattan's net resources and substantial evidence otherwise supports the decision of TWC, the trial court did not err in granting judgment in favor of Dr. Grattan. Issues one and two are overruled.

CONCLUSION

The trial court's order is affirmed.

Patrick A. Pirtle
Justice

11