**Affirmed and Opinion filed September 19, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00752-CV

_____

### STEVE MCCRORY, D/B/A MCCRORY & ASSOCIATES, Appellant

### V.

### KRISTEN M. HENDERSON AND TEXAS WORKFORCE COMMISSION, Appellee

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 11CV1833**

## O P I N I O N

The Texas Workforce Commission ("TWC") awarded Kristen M. Henderson unemployment compensation benefits and authorized a charge back of those benefits to Steve McCrory d/b/a McCrory & Associates. McCrory sought review of the decision in district court. Both parties filed motions for summary judgment regarding whether the TWC's decision was supported by substantial evidence. Following a hearing, the trial court upheld the TWC's decision, denying

McCrory's motion and granting TWC's and Henderson's motions. From that decision, McCrory brings this appeal. Because the record contains substantial evidence to support the TWC's decision, we affirm.

## BACKGROUND

Henderson began temporary employment with McCrory in 2007. In March 2008, she was hired on a full-time basis. In June 2011, Henderson quit. According to Henderson, she quit because Michael Richardson, the Operations Manager and her direct supervisor, had sexually harassed her. Based upon her claim that she had good cause connected to her work for voluntarily leaving her employment, Henderson filed a claim for unemployment compensation. *See* Tex. Lab. Code Ann. § 207.045 (West 2006).[1]

The TWC hearing examiner initially determined that Henderson was disqualified for unemployment compensation. She appealed to the Commission's Appeal Tribunal division for a hearing on the merits. Following an evidentiary hearing, the Appeal Tribunal affirmed the earlier disqualification. Henderson then appealed to the Commissioners, who unanimously reversed the Appeal Tribunal and awarded her unemployment compensation benefits. In their ruling reversing the Appeal Tribunal, the Commissioners found that Henderson was being sexually harassed by Richardson and that Steve McCrory, the owner of the company, was aware of the harassment. The Commissioners also found that Henderson complained to McCrory and that he told her the allegations would be investigated. The Commissioners further found that after a week had passed, there was no indication that McCrory was taking any remedial action in response to

---

[1] Under this provision, a former employee is not entitled to unemployment benefits if she left the job "voluntarily without good cause connected with the individual's work." Tex. Lab. Code Ann. § 207.045(a).

2

Henderson's complaint. The Commissioners concluded that Henderson had good cause connected with her work for voluntarily leaving her employment with McCrory.

McCrory filed a petition for judicial review in the district court, seeking reversal of the TWC's decision. All parties filed traditional motions for summary judgment. The trial court granted Henderson's and TWC's motions for summary judgment and denied McCrory's motion for summary judgment, upholding the decision of the TWC. McCrory now appeals, contending the TWC's decision was not supported by substantial evidence.

## ANALYSIS

### I. Standard of review

In three issues on appeal, which we review together, McCrory contends that the trial court erred in denying his motion for summary judgment and granting Henderson's and the TWC's motions for summary judgment because the TWC's decision awarding Henderson unemployment benefits was not supported by substantial evidence. We review the TWC's decision on unemployment benefits de novo to determine whether there is substantial evidence to support the TWC's ruling. *See* Tex. Lab. Code Ann. § 212.202(a) (West 2006); *Elgohary v. Texas Workforce Comm'n*, No. 14-09-00108-CV, 2010 WL 2326126, at *2 (Tex. App.— Houston [14th Dist.] June 10, 2010, no pet.) (mem. op.). The TWC's action is presumed valid, and the party seeking to set aside the decision has the burden of showing that it was not supported by substantial evidence. *Hooda Corp. v. Tex. Alcoholic Beverage Comm'n,* 370 S.W.3d 458, 461 (Tex. App.—Dallas 2012, no pet.); *Elgohary*, 2010 WL 2326126, at *2. Whether there is substantial evidence to support an administrative decision is a question of law. *Tex. Dep't of Pub. Safety v. Alford,* 209 S.W.3d 101, 103 (Tex. 2006). Substantial evidence is more than a

mere scintilla and need not be a preponderance. *Garza v. Texas Alcoholic Beverage Comm'n*, 138 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "Evidence may actually preponderate against the decision of an agency and still amount to substantial evidence." *Id.* (citing *Lewis v. Metro. Sav. & Loan Ass'n,* 550 S.W.2d 11, 13 (Tex. 1977)).

Under this standard of review, "the issue is whether the evidence introduced before the trial court shows facts in existence at the time of the [TWC's] decision that reasonably support the decision." *Collingsworth Gen. Hosp. v. Hunnicutt,* 988 S.W.2d 706, 708 (Tex. 1998). On controverted issues of fact, we may not substitute our judgment for that of the TWC. *Tex. Alcoholic Beverage Comm'n v. Cabanas,* 313 S.W.3d 927, 930 (Tex. App.—Dallas 2010, no pet.) The TWC's decision may be set aside only if it was made without regard to the law or the facts and, as a result, was unreasonable, arbitrary, or capricious. *See Collingsworth,* 988 S.W.2d at 708; *Murray v. Tex. Workforce Comm'n,* 337 S.W.3d 522, 524 (Tex. App.—Dallas 2011, no pet.).

We review the trial court's judgment by comparing the TWC decision with the evidence presented to the trial court and the governing law. *Blanchard v. Brazos Forest Prod., L.P.,* 353 S.W.3d 569, 573 (Tex. App.—Ft. Worth 2011, pet. denied). We determine whether the summary judgment evidence established as a matter of law that substantial evidence existed to support the TWC's decision. *Id.* We conclude that it does.

## II.    Evidence supporting the TWC's decision

Applying this standard of review, we begin by summarizing the evidence supporting the TWC's decision. Henderson testified before the TWC that she was "forced to quit" due to the circumstances and environment at work. She testified that Richardson had sexually harassed her since at least the middle of 2010. At

4

times he would try to pull Henderson onto his lap or to sit in hers. Richardson blew Henderson kisses, told her she looked "good enough to eat," repeatedly asked her out, suggestively rubbed her hair, and referred to her as "beautiful," "sexy," and "gorgeous."

In one incident, when Henderson asked for a raise, Richardson told her that she needed to leave her fiancé and let Richardson "have [his] way with [her]" sexually, and he would take care of her and she would never look back. In another incident in May 2010, while McCrory was present, Richardson told Henderson that her "butt looked good in [her] jeans." Henderson looked at McCrory, who shook his head but said nothing to Richardson.

In the final incident on June 3, 2011, Henderson testified that Richardson went to her desk, leaned over, tried to look down her dress and asked her, "Are you wearing panties?" Henderson told Richardson to get away from her. Henderson testified that she tried to confront Richardson about his behavior through a text, to which he responded, "I counted on you and trusted you. No more. Your [sic] making a mistake!"

Henderson testified that she was never given an employee handbook and was not aware of a sexual harassment policy or reporting procedure. Henderson was afraid to come forward, but she finally spoke to McCrory on June 15. McCrory said he would speak to Richardson and get him to apologize, but that he did not want to involve anyone else. McCrory also told Henderson that he would get back in contact with her regarding the results of his investigation. Henderson did not contact McCrory about the situation again until June 24. On that day, Henderson called McCrory twice and could not leave a voice message because his voicemail was full, so she texted him twice. At point, having received no apology from Richardson, heard nothing back from McCrory regarding the

5

promised investigation, and seen no indication that an investigation was underway, Henderson concluded that McCrory was not going to do anything about the sexual harassment and was now avoiding her. She therefore quit later that day by sending McCrory an email. Henderson believed that if McCrory had been conducting any type of investigation, she would have seen people going in and out of the conference room because it was a small office. She also believed that if McCrory had spoken to Richardson, Richardson would have apologized.

Jaclyn Cron, a former McCrory employee, testified that she quit in 2007 because her husband did not approve of some of the incidents at work. Richardson often rubbed Cron's back and shoulders. On one occasion, when Cron left to pick up her son from daycare, she texted Richardson that she would not make it back to the office and to call if he needed anything. Richardson texted in response, "Even in the middle of the night?" Cron's husband saw all of the texts. Cron responded "no" and told Richardson not to communicate with her in that way. Cron never went back to the office. When asked at the TWC hearing if she knew whether Richardson harassed anyone else, Cron stated that another employee told her that her husband had also become upset about a comment regarding sexual activity.

Amanda Watson, another former employee, testified before the TWC that Richardson was "very touchy feely" with Henderson with "lots of shoulder rubbing, things like that." In her opinion, Richardson acted inappropriately. "He'd make innuendos. He'd say you know what you have to do if you want to go home early . . . ." Watson testified that she was fired after she informed the company that she was pregnant.

**III.    The trial court did not err in granting summary judgment that the TWC's decision was supported by substantial evidence.**

McCrory asserts there is not substantial evidence to support the TWC's findings that (1) harassment occurred; (2) the employer was aware of Richardson's prior conduct; (3) the employer failed to take remedial action; or (4) Henderson had good cause connected to her work for voluntarily leaving her employment. The question for this Court, however, is whether there is substantial evidence to support the TWC's ruling awarding benefits to Henderson. *See Collingsworth,* 988 S.W.2d at 708. We conclude that there is.

As summarized above, Henderson testified to conduct by Richardson that constitutes sexual harassment.[2]  In addition, Watson testified she witnessed inappropriate conduct and comments that Richardson directed to Henderson. Henderson also related an incident that occurred in front of McCrory, and it is undisputed that McCrory took no remedial action in response to that incident.

Henderson testified that after she reported the harassment to McCrory on June 15, she believed McCrory was avoiding her and not conducting an investigation.  Henderson saw no evidence of an investigation in the small office, and she never received the apology from Richardson that McCrory had promised. According to Henderson, she quit because Richardson was sexually harassing her and McCrory was not responding to her attempts to determine if he was "taking care of the situation."

---

[2] Sexual harassment claims generally take one of two forms: (1) quid pro quo harassment, in which employment benefits are conditioned on sexual favors; and (2) harassment that creates a hostile or offensive work environment. *See Hoffmann-LaRoche, Inc.  v. Zeltwanger*, 144 S.W.3d 438, 445 n.5 (Tex. 2004).

7

On appeal, McCrory points to TWC precedent indicating that an employee quits without good cause if she does not afford the employer an opportunity to remedy the situation, and to evidence that he had begun an investigation. But there is evidence that: (1) McCrory did not take remedial action in response to the first incident; (2) McCrory told Henderson he was not going to involve anyone else from the company in his investigation; and (3) Henderson saw no evidence of an investigation and did not receive the promised apology from Richardson for more than a week after she reported the sexual harassment to McCrory. Thus, we conclude there is evidence in the record that Henderson gave McCrory an opportunity to remedy the situation.

McCrory also points to evidence from Richardson and other employees of a pattern of deceitful and manipulative conduct by Henderson, evidence that Henderson herself engaged in sexually suggestive conduct at work, and evidence that Henderson did not intend to remain at work while McCrory took remedial action. We do not disagree with McCrory that there was evidence contrary to the TWC's findings, but we may not substitute our judgment for that of the TWC on controverted issues of fact. *See Tex. Alcoholic Beverage Comm'n,* 313 S.W.3d at 930. The substantial evidence threshold we must apply is not a high one, and the existence of contrary evidence in the record does not demonstrate that the TWC decision is unsupported by substantial evidence. *See Blanchard,* 353 S.W.3d at 574 (holding substantial evidence supported TWC decision even though there was conflicting evidence in the record).

On this record, therefore, we conclude that substantial evidence supports the TWC's determination that Henderson had good cause connected to her work for voluntarily leaving her employment with McCrory. *See Madisonville Consol. Indep. Sch. Dist. v. Texas Employment Comm'n*, 821 S.W.2d 310, 314 (Tex.

8

App.—Corpus Christi 1991, writ denied) (holding that substantial evidence supported the Texas Employment Commission's determination that employee did not leave his last work voluntarily without good cause connected with his work, under statutory predecessor to Labor Code section 207.045(a)). In making this determination, the TWC relied upon the following definition of good cause contained in its Appeals Policy and Precedent Manual: "Good cause connected with the work for leaving, as that term is used in the law of unemployment insurance, means such cause, related to the work, as would cause a person who is genuinely interested in retaining work to nevertheless leave the job." Some courts have determined whether substantial evidence supported the TWC's decision regarding unemployment benefits based upon the TWC's definition of "good cause" and exceptions thereto. *See, e.g., Lopez v. Texas Workforce Comm'n*, No. 01-10-00849-CV, 2012 WL 4465197, at *2, 5 (Tex. App.—Houston [1st Dist.] Sep. 27, 2012, no pet.) (mem. op.) (concluding summary judgment evidence demonstrated that substantial evidence supported TWC's determination that employee did not have good cause connected to her work for voluntarily leaving her employment, based upon TWC's definition of "good cause" and exceptions thereto). The Labor Code does not define "good cause" as used in section 207.045(a), however, and we need not address whether the TWC's construction of this statutory term is correct to adjudicate the issues in this appeal. *See Tex. Employment Comm'n v. Huey*, 342 S.W.2d 544, 545–50 (Tex. 1961) (holding, based on stipulated facts, that employees did not voluntarily leave their employment without good cause connected to their work under statutory predecessor to Labor Code section 207.045(a), without addressing meaning of "good cause" under the statute). Therefore, we do not do so.

## CONCLUSION

Because we conclude that the summary judgment record shows as a matter of law that substantial evidence supports the TWC's decision, we overrule McCrory's issues and affirm the judgment of the trial court.


/s/    J. Brett Busby
Justice


Panel consists of Justices Frost, Brown, and Busby.