**Affirmed and Memorandum Opinion filed January 26, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00489-CV

---

**MICHAEL VAN DEELEN, Appellant**

**V.**

**TEXAS WORKFORCE COMMISSION AND SPRING INDEPENDENT SCHOOL DISTRICT, Appellees**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-14697**

---

## MEMORANDUM OPINION

Michael Van Deelen was denied unemployment benefits by the Texas Workforce Commission upon the TWC's finding that he was fired by his employer, Spring Independent School District, for misconduct. Van Deelen appealed the TWC's decision to the district court. TWC and Spring ISD filed a joint motion for summary judgment, which the trial court granted. The trial court rendered a final judgment, holding there was substantial evidence to support the TWC decision. On

appeal Van Deelen contends that the trial court erred by granting TWC's summary-judgment motion. We affirm.

## BACKGROUND

Van Deelen was employed by Spring ISD at Dekaney High School from November of 2015 through April of 2016 as a math teacher. During that time, Van Deelen made multiple reports about what he believed were numerous instances of unlawful drug use and dealing on the school's campus by students and a teacher. Van Deelen reported to the school's principal, Pamela Farinas, a number of Spring ISD officials, the school district's police department, and several governmental entities. Farinas investigated Van Deelen's allegations of drug use and dealing by students and the teacher and determined that the allegations had no merit. Van Deelen was warned that continuing to make unsubstantiated allegations could result in termination of his employment with Spring ISD. Farinas memorialized her investigations in a memo to the human resources department noting, "There is an evident pattern of false accusations against African-American students and teachers made by Mr. Van Deelen involving drugs." Farinas recommended to Spring ISD's human resources department and director, Deeone McKeithan, that Van Deelen be removed from campus.[1]

During the course of his employment, Van Deelen received multiple warnings for poor job performance as a teacher as well as his behavior toward students and

---

[1] In a separate action, Van Deelen sued Spring ISD, Farinas, and the school's assistant principal, Corey LeDay, alleging violations of the Texas Whistleblower Act and the Texas Constitution. *Van Deelen v. Spring ISD*, No. 14-17-00432-CV; 2018 WL 6684278 (Tex. App.—Houston [14th Dist.] Dec. 20, 2018, no pet.). Van Deelen's suit was dismissed for want of jurisdiction. This court reversed the portion of the trial court's judgment that dismissed Van Deelen's Whistleblower Act claim regarding the allegation that a teacher was dealing drugs. *Id.* at *8. According to the briefs filed in this case, the parties settled on remand, and the outcome of that appeal does not affect this appeal of the TWC's decision on his unemployment benefits.

2

teachers. On January 29, 2016, Van Deelen was reprimanded and informed that his behavior was unacceptable. Van Deelen was directed to: (1) maintain a professional demeanor at all times; (2) refrain from making any reference to students as animals; (3) refrain from falsely accusing an administrator of asking him to change grades; (4) submit discipline referrals to the community office when a student violates the code of conduct; and (5) immediately notify an administrator and campus police when he suspects criminal activity. Van Deelen was warned that failure to follow those directives could result in termination.

On February 11, 2016, Van Deelen was again reprimanded for failing to meet his professional responsibilities by marking a student absent when the student was present in class. In response, Van Deelen threatened legal action against the school. Van Deelen was directed to: (1) refrain from using attendance as a consequence for poor student behavior; (2) report students who did not return from lunch with a written referral; and (3) take accurate attendance at the 30-minute mark of each class. As with the previous reprimand, Van Deelen was notified that failure to follow the directives could result in termination of employment.

On February 17, 2016, Farinas met with Van Deelen to discuss more than 24 student complaints lodged against Van Deelen. Farinas read each complaint and gave Van Deelen an opportunity to respond. Farinas described Van Deelen's responses as accusatory and nonsensical. At the conclusion of the meeting, Van Deelen grabbed the arm of an associate principal and threatened to file a grievance against her. At that time Farinas ended the meeting and instructed Van Deelen that his behavior was unacceptable and unprofessional and that she was recommending termination of his probationary contract with the school.

The next day Farinas and McKeithan met with Van Deelen to notify him that he was being temporarily relieved of duties with pay and assigned to home duty

pending investigation into the allegations in Farinas' memo. McKeithan directed Van Deelen to leave campus immediately and meet McKeithan in the human resources office at the Central Administration Building. Van Deelen left the conference room but rather than travel to the administration building, Van Deelen returned to campus "screaming obscenities." McKeithan directed Farinas to have campus police escort Van Deelen from the campus. As Van Deelen was being escorted from the campus, he "hit [Farinas] with his personal bag, then stated in a sarcastic tone, 'Oh, I'm sorry. That was an accident.'"

Following this incident, Van Deelen was recommended for termination due to: (1) his bumping into Farinas and hitting her with his bag; (2) willfully omitting, falsifying, and misrepresenting information in employment application documents; (3) making continuous allegations that students and teachers were using and dealing drugs, accusing students of cheating, throwing away student work, assigning zeros for improper reasons; and (4) marking students absent who were present. McKeithan notified Van Deelen that he was subject to termination for: (1) misconduct toward school staff and students; (2) assault on Farinas; and (3) misrepresentation and willful omission on his employment application. Van Deelen was further notified that each of those reasons constituted independent reasons for termination of his probationary contract. Van Deelen was subsequently notified that his probationary contract with Spring ISD was terminated.

Van Deelen subsequently filed a claim for unemployment benefits and began receiving those benefits. Spring ISD appealed to TWC alleging that Van Deelen was disqualified from receiving unemployment benefits under section 207.044 of the Labor Code, which provides that an individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work. The Appeal Tribunal of TWC denied benefits and issued the following findings of

4

fact:

> The claimant was discharged due to inappropriate behavior. The final incidents occurred when the claimant hit the Principal with a bag while he was being escorted out of the building, the claimant omitted information in documents he submitted to the employer, and the claimant made continuous allegations of students and teachers using and dealing drugs. The claimant reported drug use at the school to the Principal, the F.B.I., local politicians, and the police. No evidence of drug use or drug dealing was discovered at the school. The claimant also accused the students of cheating and threw away their homework.
>
> The claimant also omitted information on his application and provided false information. The claimant omitted names of employer's [sic] and gave inaccurate dates. The employer discovered this based on federal law suits filed by the claimant against other educational institutions he worked for that were not listed on his resume.
>
> The claimant also bumped into the Principal while he was being escorted out of the building due to the aforementioned incidents.

The TWC Appeal Tribunal concluded that Van Deelen was discharged for mismanagement of a position of employment, which under section 201.012 of the Labor Code is considered discharge for misconduct connected with work. The Appeal Tribunal noted that Van Deelen accused teachers and students of drug dealing with no proof of arrest or investigation showing the allegations were true, and did not deny he omitted or misrepresented information regarding his employment on his application.

Van Deelen appealed the TWC Appeal Tribunal's decision to the full TWC, which affirmed the decision of the Appeal Tribunal with respect to the work separation and chargeback issues, leaving the remainder of the Appeal Tribunal decision in full force and effect. Van Deelen then filed a petition for judicial review of the TWC's decision to the district court. *See* Tex. Lab. Code Ann. § 212.001. The

5

district court rendered summary judgment for TWC and Spring ISD.[2] This appeal followed.

## ANALYSIS

## I.     Standard of Review and Applicable Law

TWC and Spring ISD moved for summary judgment on the ground that Van Deelen's employment with Spring ISD was terminated for misconduct as defined by Labor Code section 201.012, meaning that Van Deelen was not entitled to unemployment benefits under the Texas Unemployment Compensation Act ("the Act"). *See* Tex. Lab. Code Ann. §§ 201.012(a), 207.044(a).

We review the TWC's decision on unemployment benefits de novo to determine whether there is substantial evidence to support the TWC's ruling. *See* Tex. Lab. Code Ann. § 212.202(a); *McCrory v. Henderson*, 431 S.W.3d 140, 142 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The TWC's action is presumed valid, and the party seeking to set aside the decision has the burden of showing that it was not supported by substantial evidence. *See Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998); *see also Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984) ("The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency."). Because substantial evidence is more than a mere scintilla of evidence but less than a preponderance of evidence, the evidence may preponderate against the TWC decision but still amount to substantial evidence. *Tex. Workforce Comm'n v. City of Houston*, 274 S.W.3d 263, 267 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see*

---

[2] The full TWC's decision became final on March 14, 2017, 14 days after it was mailed on February 28, 2017. *See* Tex. Lab. Code Ann. § 212.153. Van Deelen's petition for judicial review was filed timely on March 3, 2017. *See* Tex. Lab. Code Ann. § 212.201.

*also Garza v. Texas Alcoholic Beverage Comm'n*, 138 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 13 (Tex. 1977)) ("Evidence may actually preponderate against the decision of an agency and still amount to substantial evidence."). Whether there is substantial evidence to support an administrative decision is a question of law. *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006).

Under this standard of review, "the issue is whether the evidence introduced before the trial court shows facts in existence at the time of the [TWC's] decision that reasonably support the decision." *Collingsworth*, 988 S.W.2d at 708. On controverted issues of fact, we may not substitute our judgment for that of the TWC. *McCrory*, 431 S.W.3d at 143. The TWC's decision may be set aside only if it was made without regard to the law or the facts and, as a result, was unreasonable, arbitrary, or capricious. *See Collingsworth*, 988 S.W.2d at 708.

We review the trial court's judgment by comparing the TWC decision with the evidence presented to the trial court and the governing law. *Blanchard v. Brazos Forest Prod., L.P.*, 353 S.W.3d 569, 573 (Tex. App.—Fort Worth 2011, pet. denied). Because this case comes to us on summary judgment, we determine de novo whether the summary-judgment evidence established as a matter of law that substantial evidence did (or did not) support the TWC's decision. *Harris Cnty Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 117–18 (Tex. 2017). We determine whether the summary-judgment evidence established as a matter of law that substantial evidence existed to support the TWC's decision. *Blanchard*, 353 S.W.3d at 573. We conclude that it does.

## II.     Evidence supporting the TWC's decision

Applying this standard of review, we begin by summarizing the evidence

supporting the TWC's decision. The TWC determined that Van Deelen was discharged for misconduct as defined by section 201.012 of the Act by engaging in inappropriate behavior, specifically (1) making false accusations against students and staff; (2) assaulting Farinas; and (3) misrepresenting his employment history on his employment application. *See* Tex. Lab. Code Ann. § 201.012.

## A. False accusations against students and staff

Van Deelen alleged that he saw two students exchange money for drugs at the door to his classroom. Farinas and assistant principal Jeff Goston questioned the students and determined that the money was exchanged to permit one student to purchase lunch for the other because the second student was working in the college career center that day. Van Deelen also accused one student of passing what he suspected to be pills or marijuana to another student. Both students were immediately interviewed by staff and the item being exchanged was determined to be chewing gum.

Van Deelen accused another teacher of drug dealing after seeing a student access the teacher's car in the school parking lot. Farinas spoke first with the student who said he had gone to the teacher's car to get candy, not drugs. Farinas then interviewed the teacher who admitted he occasionally sent students to his car to retrieve things for him. The teacher admitted he kept diet pills in his car. The teacher voluntarily escorted Farinas to his car and showed her two bottles of "Fat Fighter" weight loss supplements. Farinas determined that Van Deelen's allegations were "not only unsubstantiated, but also unwarranted."

Van Deelen responded with a declaration in which he admitted he reported "multiple instances of unlawful drug use and dealing" at the school. Van Deelen further admitted that he accused a teacher of drug use and/or dealing. Van Deelen recorded one student handing money to another student. Van Deelen alleged that one

8

of the students was dressed in red, which indicated the student was a member of the Bloods gang. Van Deelen also alleged that the student told Van Deelen that he "wanted to become the biggest gang dealer in Houston." Van Deelen submitted the video to the trial court and this court. The video shows a hand-to-hand exchange of something, which could be money. The video does not reflect an exchange of illegal drugs. Van Deelen presented evidence that a substitute teacher, Justin Wheat, had smelled the odor of marijuana coming from a student bathroom the same day Van Deelen smelled it. Wheat admitted, however, that he did not report the odor to school authorities.

TWC also considered evidence of multiple student complaints made against Van Deelen and Van Deelen's responses. Farinas met with Van Deelen to notify him of the complaints and permit him to respond. The complaints included allegations that Van Deelen threw students' work away before grading it, told a student he would intentionally fail the student, falsely accused students of cheating, took pictures of students without their consent, called students clowns and animals, pushed a student, and called a student a "crook" and a "demon." Van Deelen responded to each allegation, primarily attacking the students, including accusing students of being drug dealers, accusing a school administrator of "coaching" students to accuse him, threatening litigation against Spring ISD, and threatening litigation against students who were over 18 years old. At the end of this meeting, Van Deelen turned to Katherine Fisher, associate principal, grabbed her arm, and said, "I've grieved you." Farinas interjected that Van Deelen's conduct was inappropriate and unnecessary, and Van Deelen grabbed Fisher's arm again and said, "I'm referring to her. I'm just teasing, I did grieve her, but I'm just teasing about it." At this moment Farinas discontinued the meeting and notified Van Deelen that she was recommending non-renewal of his contract.

9

## B.    Assault of Farinas

Farinas averred in her declaration that Van Deelen was asked to leave the campus on the day after their discussion about the student complaints. Van Deelen was asked to gather his belongings and report to the human resources office at the administration building. Van Deelen left campus but returned, "screaming obscenities." Farinas directed the campus police officers to escort Van Deelen to his car to ensure that Van Deelen left campus. As Van Deelen was being escorted off campus he hit Farinas with his personal bag, then, according to Farinas, stated in a sarcastic tone, "Oh, I'm sorry. That was an accident."

Van Deelen denied assaulting or injuring Farinas. Attached as a supplemental exhibit to Van Deelen's response to summary judgment is a document written and signed by Corey LeDay, a campus employee. In the document, LeDay recounts the events that happened when Farinas was assaulted. LeDay states that he accompanied Farinas to Van Deelen's classroom and noted that Van Deelen "became very aggressive" and continued to make threats toward Farinas and him. LeDay saw Van Deelen place a school calculator in his bag. When Farinas asked him to remove the calculator from his bag Van Deelen refused saying, "Yeah, I'm stealing the calculator." Van Deelen continued to place additional objects into his bag, saying, "I'm stealing a lot of stuff." LeDay described Van Deelen's aggressive behavior toward Farinas including threatening to throw an apple at her, and saying, "You come here. I got something for you." Farinas asked Van Deelen to refrain from making threats and called the campus police to assist with removing Van Deelen from campus. As Van Deelen walked out of the room, LeDay heard Farinas say, "ow, you hit me." LeDay looked at Farinas who "immediately grabbed her left leg in disbelief." LeDay reported that Van Deelen acknowledged hitting Farinas but seemed unconcerned stating he was sorry and that he hit Farinas by accident. LeDay

10

also described Van Deelen's apology as sarcastic.

## C.    Misrepresentations and/or willful omissions on employment application

As part of its summary-judgment proof, Spring ISD produced a conference summary written by McKeithan of human resources. McKeithan noted that Spring ISD requires applicants to disclose all previous employers on their application. Under employment history on Van Deelen's Spring ISD application he listed, dating back to 2010, Club Z, Klein ISD, Houston Learning Academy, and Texas Virtual Academy. Van Deelen also uploaded a resume that said from 2003 to 2009 he served as an "Independent Project Manager and Software Developer."

McKeithan learned, however, that during the 2006-07 school year, Van Deelen was employed as a teacher in Alamogordo, New Mexico, and that the following school year Van Deelen worked as a teacher in Truth or Consequences, New Mexico. McKeithan learned about Van Deelen's employment in New Mexico because Van Deelen filed suits in federal court in two separate actions against both New Mexico school districts.

On the Spring ISD application Van Deelen answered, "No" to the question: "Have you ever: Been investigated for misconduct related to your employment?" Court documents in the New Mexico suits revealed that Van Deelen was investigated by the Alamogordo school district because supervisors were concerned that Van Deelen "committed various unspecified crimes while [he] was on school property." According to documents in the suit against the Truth or Consequences school district, Van Deelen was investigated for using a racial slur against a student, grabbing another student by the throat on the playground, and for verbally abusing and menacing the guardians of that student.

Van Deelen also answered, "No" to the question: "Have you ever: Been

11

placed on leave by an employer or left such employment prior to the end of the employment term?" According to the Alamogordo litigation, Van Deelen was placed on leave twice by Alamogordo Public High School. According to the Truth or Consequences litigation Van Deelen was suspended from employment pending the investigation into the allegations of verbal and physical abuse.

Van Deelen also answered, "No" to the question: "Have you ever: Had a professional certificate, credential, or license (of any kind) revoked or suspended or have you been placed on probationary status for any alleged misconduct or alleged violation of professional standards or conduct?" However, in a lawsuit filed in state court in Kansas in 2010 against the Texas Region 4 Education Service Center, Van Deelen alleged that he was dismissed from the Region 4 alternative certification program in April 2010. If Van Deelen's allegation were true, it would have resulted in him being denied the Texas certification, which should have been reported to Spring ISD.

McKeithan explained to Van Deelen that these failures to disclose previous employment relationships and falsification of prior suspensions and dismissal from the certification program were grounds for immediate termination.

In response Van Deelen did not deny falsifying his application or omitting certain previous employment. Van Deelen argued that the application did not require his entire employment history and that he should have been given the opportunity to correct his application. Spring ISD attached court documents from the Alamogordo litigation to its motion for summary judgment. Van Deelen objected to those documents stating he did not remember them. The record does not reflect a ruling by the trial court on Van Deelen's objection.

**III. The trial court did not err in rendering summary judgment that the TWC's decision was supported by substantial evidence.**

Van Deelen asserts that: (1) the trial court applied an incorrect standard of review; (2) the trial court would not allow him to discuss his evidence; (3) Spring ISD's evidence was untrustworthy because Farinas was not a credible witness; (4) Spring ISD presented fraudulent documentary evidence; (5) Van Deelen satisfactorily explained his employment history to Spring ISD; (6) Van Deelen did not throw students' work away; and (7) the TWC hearing was "biased, one-sided and unfair."

**A. Trial court's application of the standard of review**

In asserting the trial court applied the incorrect standard of review, Van Deelen references a portion of the summary-judgment hearing. At the beginning of the hearing TWC's attorney stated the procedural posture and the standard of review as follows:

> Again, the standard of review in this case is substantial evidence. The role of the Court, Your Honor, is to review the facts that are before the Texas Workforce Commission and determine if they are substantial; which means if there was more than a scintilla of evidence to support the Texas Workforce Commission's decision that was discharged conduct.

In response to Van Deelen's discussion of the facts, the trial court explained that it was not the court's role to be "re-reviewing the matter to see whether or not the Court agrees or disagrees with the ruling. Under the procedure for this, you have the substantial evidence standard of review." A discussion ensued about the trial court's review and the parties and the trial court agreed that while the trial court was to review the TWC decision under the substantial evidence rule, the court could consider additional evidence submitted to the trial court. This was a correct application of the standard of review.

13

As stated above, we review the TWC's decision on unemployment benefits de novo to determine whether substantial evidence supports the ruling. *See* Tex. Lab. Code Ann. § 212.202(a); *McCrory*, 431 S.W.3d at 142. We must look to the evidence presented in the trial court and not the record created by that agency. *Angelis v. Tex. Workforce Comm'n*, No. 14-19-00367-CV, 2020 WL 3240951, at *2 (Tex. App.—Houston [14th Dist.] June 16, 2020, no pet.) (mem. op.) (citing *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986)). Individual items within the agency record may be introduced at trial, but they must be introduced independently and pursuant to the rules of evidence. *See Nuernberg v. Tex. Emp't Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993). We then review the trial court's judgment by comparing the TWC's decision with the evidence presented to the trial court and the governing law. *McCrory*, 431 S.W.3d at 143. We determine whether the summary-judgment evidence established as a matter of law that substantial evidence supported the TWC's decision. *Id.*

The record reflects some confusion at the beginning of the summary-judgment hearing, but the confusion was cleared up before the trial court ended the hearing and took the case under advisement. The trial court applied the appropriate standard of review permitting both parties to file additional evidence before it ruled.

### B. Exclusion of evidence

Van Deelen further argues he was prejudiced because he was not permitted to discuss his evidence. Van Deelen does not point to any place in record where the trial court excluded any evidence, and our independent review has not revealed any such trial-court action. For Van Deelen to prevail on this issue on appeal, the record must show that he offered evidence and that the trial court actually excluded the evidence. Tex. R. App. P. 33.1(a); *In re Marriage of Rangel & Tovias-Rangel*, 580 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("To show that the trial court abused its discretion in excluding evidence, a complaining party must

preserve error by actually offering the evidence and obtaining an adverse ruling from the court."). The record shows neither. Van Deelen offered documentary evidence in response to the motions for summary judgment. Van Deelen's evidence was not excluded by the trial court. Van Deelen does not point to any summary-judgment evidence that was excluded. Given Van Deelen's failure to preserve error on his exclusion-of-evidence complaint, he cannot prevail on appeal. *See Lopez v. Callahan*, No. 14-18-00913-CV, 2020 WL 5834023, at *2 (Tex. App.—Houston [14th Dist.] Oct. 1, 2020, no pet.) (mem. op.) (holding that in the summary-judgment context an appellant must preserve error in the trial court when challenging exclusion of evidence on appeal).

## C. Substantial evidence of misconduct

An individual is disqualified from receiving unemployment benefits if the individual was discharged for misconduct connected with the individual's last work. Tex. Lab. Code Ann. § 207.044(a). "Misconduct" means mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees. *Id*. § 201.012(a).

According to the TWC's decision, Van Deelen was found to have engaged in misconduct by (1) falsely accusing students and teachers of drug use and/or dealing and poor work performance; (2) assaulting Farinas; and (3) willfully misrepresenting his employment history on his employment application. Each of those acts of misconduct alone could support the trial court's decision. *See Angelis*, 2020 WL 3240951 at *3 (employee's failure to follow instructions is misconduct); *Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 296 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (failure to comply with company policy requiring disclosure of outside

work was misconduct); *Tex. Workforce Comm'n v. Moses*, No. 07-12-00207-CV, 2013 WL 4711531, at \*5 (Tex. App.—Amarillo Aug. 29, 2013, pet. denied) (mem. op.) (misconduct includes conduct that is disruptive or insubordinate, or causes an employer concern for co-workers' safety).

We agree with Van Deelen that there was evidence contrary to the TWC's findings, but we may not substitute our judgment for that of the TWC or the trial court on controverted issues of fact. *See Tex. Alcoholic Beverage Comm'n*, 313 S.W.3d at 930. The substantial evidence threshold we must apply is not a high one, and the existence of contrary evidence in the record does not demonstrate that the TWC decision is unsupported by substantial evidence. *See Blanchard*, 353 S.W.3d at 574 (holding substantial evidence supported TWC decision even though there was conflicting evidence in the record).

On this record, therefore, we conclude that substantial evidence supports the TWC's determination that Van Deelen was terminated for misconduct. Given the evidence recited above, we cannot say that Van Deelen has met his burden to show the TWC's decision was unreasonable, arbitrary, or capricious. *See Collingsworth*, 988 S.W.2d at 708. We overrule Van Deelen's sole issue on appeal.

<h2 style="text-align:center">CONCLUSION</h2>

Having overruled Van Deelen's issue we affirm the trial court's summary judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

16