

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00021-CV

TEXAS WORKFORCE COMMISSION, APPELLANT

V.

DENTAL HEALTH FOR ARLINGTON, INC., A
TEXAS NONPROFIT CORPORATION, APPELLEE

On Appeal from the 96th District Court
Tarrant County, Texas[1]
Trial Court No. 096-298113-18, Honorable R. H. Wallace, Presiding

April 19, 2021

OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant, Texas Workforce Commission (TWC), appeals the trial court's summary judgment reversing TWC's decision to grant unemployment benefits to Alma D. Castillo, a former employee of appellee, Dental Health for Arlington, Inc. (DHA). We reverse the

---

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Second Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

trial court's judgment and render judgment granting unemployment benefits to Castillo in accordance with the TWC's unemployment award.

Factual and Procedural Background

DHA is a nonprofit corporation that provides dental services to individuals who are unable to afford them and reside in or near Arlington, Texas. Castillo worked for DHA as a dental assistant from May 10, 2016, through September 20, 2017. Prior to September 1, 2017, Castillo had never received an Employee Warning Notice.

Effective September 1, 2017, DHA instituted a policy that required employees to be present at the work facility at 8:00 a.m. Employees are afforded a 15-minute grace period for unexpected delays. However, an employee is considered late at 8:16.[2]

On September 19, 2017, DHA contends that Castillo arrived to work after 8:15, and was, therefore, late. On that day, Castillo's supervisor, Lily Grelard, was notified by a staff member that other employees had not arrived at work by 8:19. Grelard arrived at the office at 8:25 and began filling out DHA documentation, presumably Employee Warning Notices. At some point, Castillo arrived and, in accordance with DHA policy, clocked in on one of the computers. That computer recorded that Castillo had clocked in at 8:13. Grelard presented an Employee Warning Notice to Castillo that stated, "Please arrive between 8:00 – 8:15 am. Policy as of September 1, 2017 for full time employees receiving 32+ hours." Castillo refused to sign the notice but did mark that she disagreed

_____

[2] This 15-minute grace period was acknowledged by DHA multiple times, including in its petition and in the September 19, 2017 Employee Warning Notice that Castillo was asked to sign.

with the statement and wrote that she "clocked in @ 8:13." Because Castillo refused to sign the notice, Grelard told her to go home.

Later that evening, Grelard emailed Castillo about the incident. Grelard acknowledged that the computer indicated that Castillo clocked in at 8:13, but that this computer "deviates between all the computers." Grelard insisted that it was a violation of DHA policy for Castillo to refuse to sign the notice. She further provided that, "[b]y not signing DHA documentation paper[]work, you chose to leave." Grelard also stated that, "[t]ommorrow[,] when you return to the clinic[,] please consider that you will need to be receptive to correction from your immediate supervisor or dentist." Castillo responded to Grelard's email stating that, "I did not cho[o]se to leave. You told me if I did not sign[,] to clock out and go home."

The next day, Castillo arrived at the DHA office ready to work. Before she could do so, DHA Executive Director Nancy Blinn and Grelard brought Castillo to a private room where Castillo was again ordered to sign the notice from the prior day. When Castillo again refused to sign the notice, Blinn and Grelard gave Castillo two choices: (1) sign the notice to document that she was aware of the policy or (2) refuse to sign and get a second Employee Warning Notice for insubordination. When Castillo persisted in refusing to sign, Grelard presented Castillo with a second notice alleging that Castillo had been insubordinate. When Castillo refused to sign either notice, she was "terminated."

After her termination, Castillo applied for unemployment benefits through TWC. TWC granted her claim. DHA appealed TWC's decision. TWC upheld its decision at both the appeal tribunal and commission levels. DHA then filed suit for judicial review of

3

the TWC decision with both TWC and Castillo as defendants. TWC moved the trial court for summary judgment. DHA responded and filed a cross-motion for summary judgment. The trial court granted summary judgment in favor of DHA and denied TWC's summary judgment motion. TWC filed a motion for new trial, which was denied by the trial court. TWC then timely appealed.

TWC presents one issue by its appeal. That issue is whether the trial court erred by granting DHA's cross-motion for summary judgment, which reversed TWC's administrative decision and disqualified Castillo from receiving unemployment benefits. TWC seeks reversal of the trial court's summary judgment and rendition of summary judgment in its favor.

Review of TWC Decision

The Texas Labor Code provides that judicial review of TWC unemployment benefits decisions is by trial de novo using the substantial evidence standard. TEX. LAB. CODE ANN. § 212.202(a) (West 2015). TWC's decision is presumed to be valid, and the burden is on the other party to prove otherwise. *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). The trial court must hold an evidentiary trial to "determine whether the agency's ruling is free of the taint of any illegality and is reasonably supported by substantial evidence." *Edwards v. Tex. Emp't Comm'n*, 936 S.W.2d 462, 465 (Tex. App.—Fort Worth 1996, no writ). The determination of whether TWC's decision is supported by substantial evidence does not ask the trial court to determine whether TWC made the correct decision but instead requires the court to assess whether the evidence presented to the trial court shows facts in existence at the time of the agency's decision

4

that reasonably support its decision. *Blanchard v. Brazos Forest Prods., L.P.*, 353 S.W.3d 569, 572 (Tex. App.—Fort Worth 2011, pet. denied) (citing *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998)).  In other words, the relevant inquiry is whether reasonable minds could have reached the conclusion reached by TWC. *Id.*  "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency."  *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). Because substantial evidence is more than a mere scintilla of evidence but less than a preponderance of evidence, the evidence may preponderate against TWC's decision but still amount to substantial evidence. *Blanchard*, 353 S.W.3d at 572.  TWC is tasked with being the primary factfinding body and a reviewing court may not substitute its judgment on controverted fact issues; rather, the question before the trial court is one of law. *Id.*

Standard of Review

An appellate court reviews the granting of a motion for summary judgment de novo. *Helix Energy Sols. Grp. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017).  "To prevail on a traditional motion for summary judgment, 'a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.'" *Id.* (quoting *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)).  In conducting our review, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, the party that did not prevail may appeal both decisions.

5

*Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996). In this situation, the appellate court reviews both parties' summary judgment evidence and renders the judgment that the trial court should have rendered. *Martin Operating P'ship LP v. QEP Marine Fuel Inv., LLC,* 525 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Trial courts may grant summary judgment in cases tried under the substantial evidence rule. *Blanchard*, 353 S.W.3d at 573. "Indeed, appeals under substantial evidence review are uniquely suited to summary judgment because the only issue before the court is a question of law." *Id.* Our review of the trial court's judgment compares the TWC decision with the evidence presented to the trial court and the governing law. *Id.* We determine whether the summary judgment evidence established as a matter of law that substantial evidence existed to support the TWC decision. *Id.*

Law and Analysis

The Texas Unemployment Compensation Act (TUCA) defines who is qualified to receive unemployment benefits. TEX. LAB. CODE ANN. §§ 201.091, 207.002 (West 2015). TUCA provides that "[a]n individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work." *Id.* § 207.044(a) (West 2015). An individual is also disqualified for benefits if she left her last employment "voluntarily without good cause connected with the individual's work." *Id.* § 207.045(a) (West 2015). DHA contends that Castillo is disqualified by both sections. Because the trial court did not identify the basis for its ruling, we must affirm its ruling on any meritorious theory that was presented to the trial court. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).

Misconduct

One basis upon which a claimant may be disqualified for unemployment benefits is when the individual was discharged for misconduct. TEX. LAB. CODE ANN. § 207.044(a). "Misconduct" is defined as "mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees." *Id.* § 201.012(a) (West 2015).

Because TWC determined that Castillo was not disqualified for unemployment benefits on the basis that she was discharged for misconduct, before it could grant summary judgment on this basis, the trial court was required to accept as true all of TWC's evidence, indulge every reasonable inference and resolve any doubts in its favor, and determine whether the summary judgment evidence showed, as a matter of law, that facts in existence at the time of TWC's decision reasonably supported the decision. *Blanchard*, 353 S.W.3d at 573.

TWC's determination that Castillo was not disqualified due to misconduct is based on its determination that DHA terminated Castillo's employment because she refused to sign two reprimands arising from the same incident. TWC emphasized that DHA did not "clearly establish" that Castillo had been notified prior to her termination that her refusal to sign the notices would result in her firing. *See Levelland Indep. Sch. Dist. v. Contreras*, 865 S.W.2d 474, 478 (Tex. App.—Amarillo 1993, writ denied) (no substantial evidence when record reflected that employee was never given notice of the policy that he violated

7

or that such a violation would lead to his firing).  It also noted that Castillo was not afforded an opportunity to "rebut the allegation" and "explain her version of the incident."

Viewing the evidence in the light most favorable to TWC's decision, as we must, there is no summary judgment evidence in the record that DHA had a "clearly establish[ed]" policy of which its employees were aware prior to September 19, 2017, that refusal to sign an Employee Warning Notice would result in termination of the employee's employment.  In an affidavit, Grelard acknowledged a variance between the time displayed on DHA computers and that this variance makes "this a 'non-incident.'" Furthermore, as to DHA's summary judgment arguments, both Grelard and the Employee Warning Notice indicate that an employee is considered late if they arrive after 8:15; Castillo's time sheet indicates that she clocked in to work on September 19 at 8:13; while there was a known computer that ran slow, DHA did not clearly establish a policy prohibiting the use of that computer for purposes of clocking in until after September 19; and Castillo attested that she was terminated for refusing to sign the Employee Warning Notices on September 20.

We conclude that this evidence is sufficient to provide some reasonable basis supporting TWC's decision that Castillo was not disqualified from receiving unemployment benefits because she was discharged from her employment due to her misconduct.[3]  *See Tex. Health Facilities Comm'n*, 665 S.W.2d at 452 ("The true test is

---

[3] In its brief, DHA seemingly concedes this point when it states, "the summary judgment evidence is such that reasonable minds *could* differ with [a]ppellant's agency determination that Castillo did not engage in misconduct while employed by [a]ppellee."  When the evidence is such that reasonable minds could come to the same decision TWC reached, TWC's decision is supported by substantial evidence.  *See Collingsworth Gen. Hosp.*, 988 S.W.2d at 708; *Blanchard*, 353 S.W.3d at 572.

not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency."). Consequently, the trial court was presented with substantial evidence in support of TWC's misconduct decision and, therefore, should not have granted summary judgment in favor of DHA and should have granted summary judgment in favor of TWC on this basis. *See Blanchard*, 353 S.W.3d at 572; *Edwards*, 936 S.W.2d at 465-66.

Voluntary Separation

Another basis upon which a claimant can be disqualified for unemployment benefits is when the individual left the employment voluntarily without good cause. TEX. LAB. CODE ANN. § 207.045(a) (West 2015). Good cause is not defined in the Texas Labor Code. *McCrory v. Henderson*, 431 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2013, no pet.). However, TWC has defined good cause in this context as "such cause, related to the work, as would cause a person who is genuinely interested in retaining work to nevertheless leave the job." *Id.* This definition has been accepted by some courts in determining whether substantial evidence supported the TWC's decision regarding whether this factor disqualifies a claimant. *See, e.g., Lopez v. Tex. Workforce Comm'n*, No. 01-10-00849-CV, 2012 Tex. App. LEXIS 8106, at *2, 12-13 (Tex. App.—Houston [1st Dist.] Sep. 27, 2012, no pet.) (mem. op.).

Because TWC determined that Castillo was not disqualified for unemployment benefits on the basis that she had voluntarily quit her job without good cause, before it could grant summary judgment on this basis, the trial court was required to accept as true all of TWC's evidence, indulge every reasonable inference and resolve any doubts in its

9

favor, and determine whether the summary judgment evidence showed, as a matter of law, that facts in existence at the time of TWC's decision reasonably supported the decision. *Blanchard*, 353 S.W.3d at 573.

In its decision, TWC spent very little time addressing whether Castillo voluntarily left her employment with DHA. It simply found that Castillo "was terminated from her employment for insubordination for refusing to sign a written reprimand . . . ." It then focused its analysis on whether Castillo's refusal constituted misconduct.

Viewing the evidence in the light most favorable to TWC's decision, as we must, the record includes Castillo's affidavit which indicates that, after being sent home for refusing to sign the first reprimand, Grelard "terminated" Castillo on September 20, when Castillo refused to sign either of the notices. There is no summary judgment evidence indicating that Castillo ever notified DHA that she was quitting or refusing to work. An employer who refuses to allow an employee to work initiates the employee's separation from work. *See Tex. Emp't Comm'n v. Huey*, 342 S.W.2d 544, 550 (Tex. 1961) (employer initiated separation when it shut down factory at which employee worked); *Tex. Workforce Comm'n v. BL II Logistics, L.L.C.*, 237 S.W.3d 875, 879, 881-82 (Tex. App.—Texarkana 2007, no pet.) (employer initiated separation when it stopped sending work to employee). Thus, in the present case, DHA's refusal to allow Castillo to resume working unless she signed the Employee Warning Notices constituted an employer-initiated separation from work that, as addressed above, did not constitute misconduct that would disqualify Castillo from receiving unemployment benefits. As such, substantial evidence exists in

the record to support TWC's decision that Castillo did not voluntarily leave her employment.

We conclude that this evidence is sufficient to provide some reasonable basis supporting TWC's decision that Castillo did not voluntarily leave her employment without good cause. *See Tex. Health Facilities Comm'n*, 665 S.W.2d at 452 ("The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency."). Consequently, the trial court was presented with substantial evidence in support of TWC's voluntary separation decision and, therefore, should not have granted summary judgment in favor of DHA and should have granted summary judgment in favor of TWC on this basis. *See Blanchard*, 353 S.W.3d at 572; *Edwards*, 936 S.W.2d at 465-66.

Concluding that substantial evidence was presented to the trial court to support TWC's decision that Castillo was not disqualified from receiving unemployment benefits because she was not fired for misconduct or voluntarily separated herself from her job, we reverse the trial court's grant of summary judgment in favor of DHA and render summary judgment in favor of TWC. TEX. R. APP. P. 43.2(c); *Martin Operating P'ship LP,* 525 S.W.3d at 717.

## Procedural Issues

DHA raises three procedural issues that we feel should be briefly addressed in the interest of clarity. First, DHA contends that the trial court's decision should be upheld because DHA presented competent summary judgment evidence that supports the trial court's decision to grant summary judgment. Second, DHA contends that TWC did not

11

properly address the issue of whether Castillo voluntarily quit her employment in its pleadings and summary judgment motion. Third, DHA contends that TWC cannot prevail on its motion for summary judgment because it improperly relied on its administrative record to establish that substantial evidence supported its decision.

DHA contends that we should affirm the trial court's grant of summary judgment in its favor because DHA presented competent summary judgment evidence to support its summary judgment motion. As previously addressed, judicial review of a TWC unemployment decision begins with the presumption that TWC's decision should be upheld. *Mercer*, 701 S.W.2d at 831. TWC's decision must be upheld if it is supported by substantial evidence. *Blanchard*, 353 S.W.3d at 572; *Edwards*, 936 S.W.2d at 465. The burden is on DHA to prove that TWC's decision was unreasonable, arbitrary, or capricious. *Mercer*, 701 S.W.2d at 831. Substantial evidence can support TWC's decision and the decision can be affirmed even when the totality of the evidence preponderates against TWC's decision. *Olivarez v. Aluminum Corp. of Am.*, 693 S.W.2d 931, 932 (Tex. 1985). Here, TWC presented substantial evidence in support of its decision and DHA failed to establish, in light of TWC's evidence, that TWC's decision was unreasonable, arbitrary, or capricious. The fact that DHA presented competent summary judgment evidence is not, in this case, sufficient to discharge its burden of proof.

DHA also contends that TWC failed to properly plead in its pleadings and motion for summary judgment that Castillo did not voluntarily quit without good cause. It is significant to note that TWC was the defendant before the trial court. As such, a general denial of matters pleaded by the adverse party is sufficient to properly dispute the

12

plaintiff's arguments. TEX. R. CIV. P. 92. However, TWC did specifically plead that substantial evidence supported its decision, which effectively raises the issue of whether Castillo voluntarily quit. DHA also contends that TWC could not argue that Castillo did not voluntarily quit unless it specifically pled this denial in its motion for summary judgment. However, the case law cited by DHA for this proposition establishes that a summary judgment cannot be *upheld* on a ground that was not presented by the movant. TWC pled in its motion for summary judgment that substantial evidence supported its decision that DHA fired Castillo for a reason other than misconduct. By contending that DHA fired Castillo in its pleading and summary judgment motion, TWC necessarily presented the issue that Castillo did not voluntarily quit.

Finally, DHA contends that TWC cannot have its motion for summary judgment granted because it improperly relied solely on the administrative record to prove that substantial evidence supports its decision. We recognize that substantial evidence cannot be predicated solely on TWC's administrative record. *Nuernberg v. Tex. Emp't Comm'n*, 858 S.W.2d 364, 365 (Tex. 1993) (per curiam). However, individual documents that are part of the administrative record may be introduced on judicial review and can constitute competent evidence upon which summary judgment may be based. *Id.* Here, TWC offered eleven exhibits to prove that its decision was based on substantial evidence. To the extent DHA is arguing that TWC's decision is inadmissible, we assess whether substantial evidence was presented to the trial court by comparing the evidence with the TWC's decision. *See Blanchard*, 353 S.W.3d at 573 ("We review the trial court's judgment by comparing the TWC decision with the evidence presented to the trial court and the governing law."). Consequently, we conclude that it was proper for the trial court to admit

13

TWC's decision and that TWC admitted sufficient evidence at trial to establish that its decision was supported by substantial evidence.

We conclude that none of the procedural issues raised by DHA would prohibit this Court from reversing the trial court's grant of summary judgment in favor of DHA and rendering judgment in favor of TWC.

Conclusion

For the foregoing reasons, we reverse the judgment of the trial court and render summary judgment in favor of TWC.


Judy C. Parker
Justice