**Reversed and Rendered and Memorandum Opinion filed October 9, 2025.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00060-CV

**THRIVE ACADEMY AND TEXAS WORKFORCE COMMISSION,**
**Appellants**

**V.**

**JENNIFER R. MITCHELL, Appellee**

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-58204**

## MEMORANDUM OPINION

Appellants Thrive Academy and Texas Workforce Commission (TWC) appeal from the trial court's judgment reversing TWC's decision and awarding Appellee Jennifer Mitchell wages after she was terminated from her job at Thrive Academy. Concluding substantial evidence supports TWC's denial of Mitchell's wage claim, we reverse the trial court and render judgment denying Mitchell's motion for summary judgment and granting Thrive Academy and TWC's joint

summary judgment motion.

## BACKGROUND

### I.     Factual Background

Jennifer Mitchell worked at Thrive Academy, a private school for special-needs students, from August 10, 2020 through May 28, 2021. Mitchell's employment contract described her position as "Director of Curriculum Development: Lead Teacher." The contract's term was twelve months beginning August 2020, "unless terminated earlier." The contract permitted Thrive Academy to terminate Mitchell's employment "at any time, with or without cause, upon written notice." In the event of early termination, Mitchell's salary would be prorated through the date of her termination "based on the fraction of the total employment term" worked.

In January of the 2020–2021 school year, Mitchell informed Thrive Academy that she would not be returning for the next school year and asked to discuss "transition of my duties before the conclusion of the current academic year." On May 21, 2021, Thrive Academy terminated Mitchell's contract effective May 28, 2021, the last day of the 2020–2021 academic school year. Mitchell was not paid for the months of June and July 2021.

### II.     Administrative Proceedings

Mitchell filed a wage claim pursuant to the Texas Payday Act. *See* Tex. Lab. Code §§ 61.001–.095. The Payday Act provides for administrative review of claims and then for judicial review of final administrative decisions. *See id*. § 61.062(a); *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 82 (Tex. 2008). Mitchell claimed that she was entitled to salary payments for June and July 2021. As relevant here, TWC's tribunal found: (1) Mitchell was a faculty member and her contract was

"for twelve (12) months period beginning on August 1, 2020, unless terminated earlier"; (2) that "[a]ll employees were paid across twelve (12) months regardless of whether they were on ten (10) months or twelve (12) months of employment contract"; and (3) Mitchell did not make herself available for additional work in June or July 2021. The TWC tribunal determined that Thrive Academy correctly prorated Mitchell's final salary payment through her last day of work on May 28, 2021, and Mitchell was not entitled to unpaid wages. Mitchell appealed the tribunal's decision to TWC, which agreed with the tribunal's decision that Mitchell was "not due any additional wages for June and July 2021."

## III.    Judicial Review in District Court

Mitchell filed a petition for judicial review of TWC's decision in Harris County District Court. Mitchell alleged TWC's decision was arbitrary and capricious because TWC improperly construed the unambiguous language of her contract and "disregarded evidence that conclusively negated the factual basis for Thrive Academy's arguments." Mitchell also alleged the TWC decision was not supported by substantial evidence.

Mitchell and TWC each filed motions for summary judgment. In her sole issue, Mitchell argued that TWC erred in construing her contract to be a twelve-month contract, rather than a ten-month contract. In support of her motion, Mitchell provided her own declaration, her contract with Thrive Academy, the school's employee handbook, and her communications with Thrive Academy.

TWC and Thrive Academy filed a joint motion for summary judgment, arguing that substantial evidence supported TWC's denial of Mitchell's wage claim. In support, TWC relied on an affidavit from Kimberly Connell, Thrive Academy's president, Mitchell's contract, and portions of the administrative record.

3

The trial court rendered summary judgment for Mitchell, reversing TWC's decision, and awarding Mitchell $10,300. This appeal followed.

## ANALYSIS

In a single issue, Thrive Academy and TWC assert the trial court erred in concluding there was not substantial evidence to support TWC's decision that Mitchell was not entitled to $10,300 in wages from Thrive Academy.[1]

## I.     Standard of Review and Governing Law

The trial court reviews TWC's decision on wage claims by trial de novo to determine whether there is substantial evidence to support TWC's ruling. Tex. Lab. Code § 61.062. "Trial de novo" usually means "a new trial on the entire case, on both questions of fact and issues of law, conducted as if there had been no trial in the first instance." *Appraisal Rev. Bd. of Harris Cnty. Appraisal Dist. v. Spencer Square Ltd.*, 252 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see* Trial, Black's Law Dictionary (12th ed. 2024) (defining "trial de novo" as: "A new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance."). In the context of an appeal from a TWC decision, however, "trial de novo" means that the district court determines whether there is "substantial evidence to support the ruling of the agency" by "look[ing] to the evidence presented in trial and not the record created by the agency." *Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 118 (Tex. 2017) (quoting *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986)); *Tex-Fin, Inc. v. Ducharne*, 492 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (on review of claim under Chapter 61, "the issue is whether the

---

[1] Thrive Academy filed a brief but did not make arguments independent of TWC's brief. We therefore address the issue as raised in TWC's brief.

4

evidence introduced before the trial court shows facts in existence at the time of [TWC's] decision that reasonably support the decision").

The TWC's decisions are presumed valid, and the party seeking to set aside the agency's decision has the burden of showing that the decision is not supported by substantial evidence—that is, "it is not supported by more than a scintilla of evidence." *Harris Cnty. Appraisal Dist.*, 519 S.W.3d at 118.

A trial court may not reverse a TWC decision simply because it would have reached a different conclusion. *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 708 (Tex. 1998). The court may only set aside the decision "if it finds that the [TWC's] decision was made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious." *Id*. "This methodology was purposefully designed by the Legislature so that agency decisions are afforded 'significant deference,' and a court is not allowed 'to substitute its judgment for that of the agency.'" *Harris Cnty. Appraisal Dist.*, 519 S.W.3d at 118 (quoting *R.R. Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995)).

Because this case comes to us on summary judgment, we determine de novo whether the summary-judgment evidence established as a matter of law that substantial evidence did (or did not) support the TWC's decision. *Id.* at 117–18. "Trial courts may grant summary judgment in cases tried under the substantial evidence rule." *Tex. Workforce Comm'n v. Dental Health for Arlington, Inc.*, 624 S.W.3d 68, 74 (Tex. App.—Amarillo 2021, pet. denied). In reviewing the trial court's judgment, we compare the TWC decision with the evidence presented to the trial court and the governing law. *Id*. We determine whether the summary judgment evidence established as a matter of law that substantial evidence supported TWC's decision. *Id*. We conclude that it does.

**II.    Mitchell's Contract is Ambiguous Because it is Susceptible to More Than One Reasonable Interpretation.**

We first consider whether the contract is ambiguous because resolution of TWC's issue turns on the interpretation of Mitchell's contract. TWC argues that Mitchell's contract was ambiguous because the contract's early termination provision did not define "total employment term." The relevant portion of Mitchell's contract provided, "In the event of an early termination, your salary will be prorated through your date of termination based on the fraction of the total employment term you worked." TWC and Thrive Academy argue the "total employment term" was twelve months; Mitchell argues it was ten months.

Whether a contract is ambiguous is a question of law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). A contract is not ambiguous simply because the parties offer differing interpretations. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). Contract language is ambiguous if it is susceptible to more than one reasonable interpretation. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765 (Tex. 2018). If after applying the pertinent rules of construction an instrument is subject to two or more reasonable interpretations, then the instrument is ambiguous, and a fact issue exists as to the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). "We give contract terms their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Apache Corp.*, 294 S.W.3d at 168.

"Total employment term" is not defined in the contract. TWC contends that the contract is ambiguous because "total employment term" is susceptible to more than one reasonable interpretation: it could mean, as Mitchell contends, that her total employment term was ten months, or as Thrive contends, twelve months. We agree

with TWC that the contract is reasonably susceptible to both interpretations.

As Mitchell contends, the contract selecting her for the position of "Director of Curriculum Development; Lead Teacher" is susceptible to an interpretation that her employment term is for a period of ten months:

> This Employment Contract (this "Contract") reflects that you have been selected and have agreed to be a full-time member of the faculty of Thrive Academy (the "School") for the 2020–2021 academic school year. You are being employed in the Position noted above ("Position"). During the academic school year of August 10, 2020 through May 28, 2021 you agree to devote full time and attention to your assignment and to perform your duties efficiently, faithfully and to the satisfaction of the Head of the School ("School Administration"), following established curriculum. Your duties consist of normal teaching duties and such other related duties which may be assigned by the School Administration.

The contract recited that Mitchell agreed to be a full-time faculty member at Thrive Academy and that she was being employed in the position of Director of Curriculum Development and Lead Teacher. Her duties consisted of "normal teaching duties" and she agreed to work full-time during the academic school year. The contract also stated that Mitchell was not entitled to paid vacation time, but would be paid for holidays "applicable to [her] position." Mitchell's interpretation that the contract was for a ten-month period of employment is reasonable.

TWC's interpretation that Mitchell's term of employment is for twelve months is also reasonable. The contract explicitly provided that "[t]his Contract is for the twelve (12) month period beginning August 1, 2020, unless terminated earlier." That term, along with the installment payment structure, makes the contract susceptible to TWC and Thrive Academy's interpretation that it was a twelve-month contract. TWC also argues that as "Director of Curriculum Development," Mitchell would have been required to work twelve months per the terms of the Employee

7

Handbook.

Mitchell responds that the only reasonable interpretation is that she was a ten-month employee because the express terms of the contract do not contemplate that she owed any performance outside the academic school year. Citing the Employee Handbook, Mitchell argues the structure of the Handbook and the Employment Contract unambiguously reflect that teachers, such as Mitchell, are paid over a twelve-month term for ten months of work. As part of Mitchell's contract she agreed to be bound by the Employee Handbook.

The Employee Handbook, however, does not define "total employment term." The Employee Handbook lists "Faculty Work Days" as "Teaching days August-May" plus several other days, such as faculty/staff meetings and in-service days. The Handbook further lists "Administrative Staff Work Days and Work Hours," noting that the "Head of School, Director of Social/Emotional Development/Admissions and Administrative Assistant work a 12-month schedule July 1 – June 30." The Handbook does not contain specific schedules for Mitchell's position as "Director of Curriculum Development; Lead Teacher."

Because "total employment term" is reasonably susceptible to both Thrive Academy and Mitchell's interpretations, we conclude that the contract is ambiguous. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 2018).[2] If there is more than one reasonable interpretation of the contractual language, then a fact issue arises regarding the parties' intent. *Rosetta Res.*

---

[2] Mitchell asserts that if the contract is ambiguous the trial court and this court are bound to construe the contract against Thrive Academy as the drafter. The rule that ambiguities in a contract should be construed against its drafter is one of last resort and plays no role "in making a fact finding about what the parties intended." *GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 291 (Tex. App.–Houston [1st Dist.] 1997, writ denied).

*Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022). If a contract is ambiguous, the parties may introduce extrinsic evidence to shed light on its meaning, which becomes a fact issue for the fact finder. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 480 (Tex. 2019).

### III. Substantial Evidence Supports the TWC's Decision.

The fact issues raised by the parties' interpretations were resolved by TWC as the fact finder. *See Firemen's & Policemen's Civ. Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984) (the trial court "must hear and consider evidence to determine whether reasonable support for the administrative order exists," but "the agency itself is the primary fact-finding body, and the question to be determined by the trial court is strictly one of law."). We examine TWC's fact findings here to determine whether TWC's decision is supported by more than a scintilla of evidence.

In support of its motion for summary judgment, TWC submitted its fact findings to the trial court. Interpreting the contract and extrinsic evidence (including testimony by Mitchell and Connell) submitted to it, TWC made the following findings of fact:

> The claimant's written contract was for twelve (12) months period beginning on August 1, 2020, unless terminated earlier. The academic year ended on May 28, 2021. Her salary would be paid over the course of (twelve) 12 months; and provided for payment in 24 installments. To terminate the contract required a 30 day notice by the claimant; the employer had the right to terminate the contract at any time with or without notice. The contract provided that: In the event of an early termination, your salary will be prorated through your date of termination based on the fraction of the total employment term you worked.
>
> The employer's written employee policy provided that faculty workdays were Monday through Friday 7:45am - 3:30pm depending on the day and specified schedule in accordance with the academic school year. The claimant was considered a faculty member. All employees

were paid across twelve (12) months regardless of whether they were on ten (10) months or twelve (12) months of employment contract.

*****

The claimant did not make herself available for additional work to be completed throughout the months of June and July; and that it was within the employer's right to terminate the contract at any time.

Extrinsic evidence presented to illuminate the terms of the ambiguous contract supports TWC's conclusion that Mitchell was a twelve-month employee. *See Nat'l Union Fire Ins.*, 907 S.W.2d at 521 (allowing the use of extrinsic evidence to interpret contract with a latent ambiguity). In addition to TWC's findings, as evidence in support of summary judgment, TWC and Thrive Academy presented (1) the affidavit of Kimberly Connell, Thrive Academy's Board president; (2) Mitchell's employment contract; and (3) portions of the administrative record from the TWC proceedings.

In Connell's affidavit, she stated that Mitchell was employed by the school from 2018 through May 28, 2021 and that her employment contract was for a term of twelve months, which began August 1, 2020, and ended July 31, 2021. Connell averred that each June and July during Mitchell's employment with the school beginning in 2018, Mitchell (1) hired teaching staff, reviewed the performance of teaching staff, prepared the school for the upcoming year, researched and prepared curriculum, established or modified school processes and procedures, and created the school schedule, academic calendar, and lesson plans; and (2) partnered with the school's Director of Social Emotional Development "to review student applications, interview potential families, conduct school tours, and select the students who would be offered admission to the School for the upcoming academic year." In addition, Mitchell reviewed and edited the Employee and Student Handbooks, led student summer camps, led teacher work weeks before the start of the school year, and

10

"[r]equested and was granted permission to work at the School, on a daily basis, during June, July and August in 2020 to, among other things, create COVID policies and procedures for the safe return of the faculty and students and prepare for the academic School year."

In Mitchell's response to TWC and Thrive Academy's motion and a supplement to her motion, she attached transcriptions of Mitchell and Connell's testimony before the TWC hearing officer. Relying on the phrase in the contract that referenced Mitchell's performance of her duties "[d]uring the academic school year of August 10, 2020 through May 28, 2021," Mitchell testified that her contract was for a "10-month work commitment." Mitchell testified she never worked during the summer months at Thrive Academy and there was no expectation that she would work during June and July 2021.

Connell testified that although Mitchell was not required to be on campus during June and July her responsibilities carried over into the summer. As Connell stated in her affidavit, Mitchell was responsible for reviewing student admission applications; creating content, curriculum, and programs for the school's summer camp; researching curriculum; and preparing for teacher work week. Connell testified that during Mitchell's employment with Thrive Academy she worked over twelve months even though she was not required to be physically present at the school all twelve months. Mitchell did not dispute she worked during the summer on curriculum and summer camp, but asserted she volunteered for those duties, and they were not considered part of her job duties.

Although Mitchell presented evidence contradicting Connell's testimony—creating a fact issue—the trial court was required to defer to TWC's finding that the contract was for a term of twelve months. *See Brinkmeyer*, 662 S.W.2d at 956 ("The trial court may not set aside an administrative order merely because testimony was

11

conflicting or disputed or because it did not compel the result reached by the agency. Resolution of factual conflicts and ambiguities is the province of the administrative body and it is the aim of the substantial evidence rule to protect that function."). We may not substitute our judgment for that of TWC on controverted issues of fact. *Harris Cnty. Appraisal Dist.*, 519 S.W.3d at 118.

Without support, Mitchell argues that Connell's testimony cannot provide substantial evidence because it is "demonstrably false." *See Brinkmeyer*, 662 S.W.2d at 956 (reviewing courts need not consider "incredible, perjured, or unreasonable testimony because such evidence is not substantial.") (quoting *Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 440 (Tex. 1946)). Mitchell provided no evidence that Connell gave perjured testimony.

Mitchell also argues that Connell's testimony violates the parol-evidence rule because it contradicts the express terms of the contract, which do not contemplate any duties outside the academic year. But Connell's testimony does not contradict the terms of Mitchell's contract. The contract expressly provides that Mitchell's contract was for twelve months and her responsibilities included "such other related duties which may be assigned by the School Administration."

Ultimately, it is not for this Court to determine if TWC's order was correct, but rather whether there was any reasonable basis supporting it. *See Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (courts "must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them"). We conclude there was more than a scintilla of evidence to support TWC's order that Mitchell was not entitled to additional wages under her contract. We sustain TWC's issue on appeal.

## CONCLUSION

We reverse the trial court's grant of summary judgment in favor of Mitchell and render summary judgment in favor of TWC and Thrive Academy.


/s/ April Farris
April Farris
Justice


Before Chief Justice Brister and Justices Field and Farris.